**James Richard ODLE, Petitioner,**

v.

**Arthur CALDERON, in his capacity as Warden of California State Prison at San Quentin, Respondent.**

No. C–88–4280–CAL.

United States District Court, N.D. California.

Feb. 21, 1996.

James Forbes, Lillick & Charles, San Francisco, CA, for petitioner.

Dane R. Gillette, California State Attorney General's Office, San Francisco, CA, for respondent.

## ORDER DENYING ADDITIONAL CLAIMS ON THE MERITS

LEGGE, District Judge.

### DEATH PENALTY CASE

#### I

Petitioner James Richard Odle, a California prisoner under sentence of death, applied to this court for a writ of habeas corpus in 1988. In two prior orders, this court denied many of the claims raised in the petition.[1] *See Odle v. Vasquez,* 754 F.Supp. 749 (N.D.Cal.1990); *Odle v. Calderon,* 884 F.Supp. 1404 (N.D.Cal.1995). This court subsequently granted an evidentiary hearing on two of Odle's claims. This order addresses Odle's remaining claims.[2]

#### II

■ The federal habeas corpus statute authorizes this court to review a state-court criminal conviction "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The important—but limited—purpose of the writ of habeas corpus is to "protect[ ] individuals from unconstitutional convictions and ... to guarantee the integrity of the criminal process by assuring that trials are fundamentally fair." *O'Neal v. McAninch,* — U.S. —, —, 115 S.Ct. 992, 997, 130 L.Ed.2d 947 (1995); *see also Brecht v. Abrahamson,* 507 U.S. 619, 632–34, 113 S.Ct. 1710, 1719, 123 L.Ed.2d 353 (1993). Even in this limited role, federal habeas review delays finality and burdens not only state and federal resources but also state-federal relations. *See, e.g., Brecht,* 507 U.S. at 634–39, 113 S.Ct. at 1720–22; *McCleskey v. Zant,* 499 U.S. 467, 490–91, 111 S.Ct. 1454, 1468–69, 113 L.Ed.2d 517 (1991); *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1981). Habeas doctrines and procedures

thus balance the protection the writ offers from unlawful custody against "the presumption of finality and legality" (*see Brecht,* 507 U.S. at 633, 113 S.Ct. at 1719) that attaches to a state-court conviction after direct review.

■ To this end, a federal habeas court must in most cases accord a presumption of correctness to state-court findings of fact. 28 U.S.C. § 2254(d). Also, the burden is generally on the habeas petitioner to prove, by a preponderance of the evidence, the facts necessary to support the claim. *See, e.g., Garlotte v. Fordice,* — U.S. —, —, 115 S.Ct. 1948, 1952, 132 L.Ed.2d 36 (1995); *Sumner,* 449 U.S. at 551, 101 S.Ct. at 771; *McKenzie v. McCormick,* 27 F.3d 1415, 1419 (9th Cir.1994). And a federal court need not set aside a state conviction or sentence for every constitutional violation. In most cases, habeas relief will be granted only if the error was either "structural" or "had substantial and injurious effect or influence in determining the jury's verdict." *See Sullivan v. Louisiana,* 508 U.S. 275, 279–83, 113 S.Ct. 2078, 2082–83, 124 L.Ed.2d 182 (1993); *Brecht,* 507 U.S. at 628–30, 637, 113 S.Ct. at 1717, 1722.

With these principles in mind, this court addresses the merits of Odle's remaining claims.

#### III

##### *Claim G*

Odle claims that he was denied the effective assistance of trial counsel because counsel did not provide mitigating expert testimony at the penalty trial. This court denied this claim in its 1990 order. *See Odle,* 754 F.Supp. at 772–74. Odle then moved for reconsideration of the court's decision on this claim.

---

1. The procedural history of the case in this court is summarized in this court's order granting partial summary judgment. *See Odle v. Calderon,* 884 F.Supp. 1404, 1410–11 (N.D.Cal.1995).

2. This court will reserve Odle's claim of cumulative error (Claim DDD) until it has reviewed all of his other claims.

 Odle also suggests that this court should re-review the seven claims it rejected in its 1990

order denying habeas relief. *See Odle,* 754 F.Supp. 749. After the order, Odle sought reconsideration of only one of these claims, now labeled Claim G. Claim G is discussed below. Odle did not seek reconsideration of Claims A through F; these claims are denied for the reasons stated in this court's 1990 order. *See id.* at 753–72.

Odle now argues specifically that trial counsel could and should have presented expert testimony that 1) linked Odle's mental condition to his actions at the time of the offense and 2) supported the two mental-state statutory mitigating factors. He was prejudiced by these failures, Odle contends, because readily available expert testimony would have diminished his mental and moral responsibility for the offenses.

The court has reviewed this claim, its prior order, the cases cited by Odle and more recent Ninth Circuit cases on ineffective assistance of counsel. *See, e.g., Hendricks v. Calderon,* 70 F.3d 1032 (9th Cir.1995); *Bonin v. Calderon,* 59 F.3d 815 (9th Cir.1995); *Williams v. Calderon,* 52 F.3d 1465 (9th Cir. 1995). As this court noted in its prior order, however, "[m]ere citation of cases only goes so far." *Odle,* 754 F.Supp. at 773.

■ On the record in this case, trial counsel's preparation and presentation of the mental-state evidence was not constitutionally deficient. The investigation that Odle's counsel conducted of Odle's mental condition is discussed at pages 1382 and 1386, below. At the guilt trial, Odle's counsel presented extensive expert testimony about Odle's brain injury and its aftermath. At the penalty trial, he clearly understood—and told the jury—that the mental state mitigating factors require "a completely different consideration than what [the jury] had to decide in the guilt phase." 29 RT 63–64. The thrust of his entire penalty-trial argument was that Odle should be deemed less culpable for the offenses and the jury should show mercy on account of his brain injury. *See generally* 29 RT 67–86. As trial counsel emphasized to the jury, this argument was supported by the guilt-trial expert and lay testimony.

■ Where mitigating evidence is presented at the guilt trial and the jury is instructed to consider it at the penalty trial, trial counsel is not necessarily ineffective for not presenting additional evidence at the penalty trial. *See Williams,* 52 F.3d at 1471. Here, as in *Williams,* trial counsel could have presented more expert testimony about the mitigating factors. Given the presentation at the guilt trial, however, this court cannot say

that trial counsel's failure to do so was objectively unreasonable. The guilt trial focused on Odle's mental state and his diminished capacity as a result of his lobectomy. At the guilt trial, Odle's attorney presented the testimony of Dr. Blum, the neurosurgeon who operated on Odle, neurologist Dr. Holtz, and psychiatrist Dr. Thompson. The issue of Odle's mental state was squarely presented to the jury, and it rejected the experts' conclusions.

For the reasons set forth here and in its 1990 order, this court DENIES Odle's renewed claim of ineffective assistance of counsel for failure to present expert mitigating evidence. *See Odle,* 754 F.Supp. at 773–74.

### Claim J

Odle claims that the trial court had a sua sponte duty to hold a hearing to determine his competency to stand trial. Respondent answers that the trial court had no such duty because it had no reason to doubt Odle's competency.

■ A defendant is incompetent to stand trial if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Hernandez v. Ylst,* 930 F.2d 714, 716 n. 2 (9th Cir.1991). The prosecution of a defendant incompetent to stand trial violates due process. *See Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993); *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Therefore, a trial court must hold a competency hearing if it has or should have a good faith or bona fide doubt about a defendant's competency. *See Pate,* 383 U.S. at 378, 385, 86 S.Ct. at 838, 842; *Blazak v. Ricketts,* 1 F.3d 891, 894 (9th Cir. 1993); *see also Moran v. Godinez,* 57 F.3d 690, 695 (9th Cir.1994) (trial court must hold hearing before allowing defendant to waive constitutional rights if it doubts defendant's competency).

■ The present question before this court is whether a reasonable trial judge

should have doubted Odle's competency to stand trial, given the evidence before it at any time before sentencing. *See Hernandez*, 930 F.2d at 716, 718. "A bona fide doubt should exist where there is substantial evidence of incompetence." *Moran*, 57 F.3d at 695. All of the evidence before the trial court may be relevant, including the defendant's conduct in court, recent suicide attempts, previous findings of incompetency, past psychological reports, trial testimony about the defendant's history of mental illness and any irrational behavior and available medical evaluations. *See Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103; *Pate*, 383 U.S. at 378–79, 86 S.Ct. at 838–39; *Moran*, 57 F.3d at 695; *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir.1993).

Here, the trial court had before it, directly and indirectly, information about Odle's psychiatric problems. At a pre-trial hearing, a psychiatrist testified that he had diagnosed Odle five years earlier as having psychosis with organic brain syndrome and prescribed anti-psychotic medication. 1B RT 8, 11.[3] Jail records ordered by the trial court reflect that Odle had set fire to his cell and was deemed suicidal less than a year before trial Ex. 4.[4] County records ordered by the trial court also document "several suicide gestures and one serious attempt." Ex. 1. Medical records admitted into evidence reflect that Odle was committed to an institution for psychiatric reasons at least three times in the ten years before the trial. Ex. 2. At both the guilt and penalty trials, lay and expert witnesses testified about his unusual post-accident behavior. *See, e.g.*, 20 RT 28–36 (Dr. Blum); 20 RT 93, 102 (Glenda Odle); 28 RT 15–17 (Michael Odle).

This information is relevant to the issue of whether the trial court should have had a good-faith doubt about Odle's competency to stand trial. This court notes, however, that most of the information related to events at least eight years before the trial; it thus carries less weight than would more contemporaneous information. *Cf. Moran*, 57 F.3d at 696 (information from the time of trial increases the accuracy of retrospective competency evaluations). Also, the various mental-health evaluations reach inconsistent conclusions about Odle's ability to cooperate and whether he presented a genuine suicide risk.

However, Odle's demeanor at trial was apparently unexceptional. *See Pate*, 383 U.S. at 386, 86 S.Ct. at 842–43. Odle's trial counsel did not seek a competency hearing. *See Blazak*, 1 F.3d at 895. Further, in light of the *Dusky* standard, this court deems it highly significant that none of the participants in Odle's trial questioned his competency, even though they had the opportunity to observe him over the course of two years of pre-trial proceedings and 28 days of trial. *See Hernandez*, 930 F.2d at 718.

In this case, where the defense on the merits was diminished capacity, every piece of evidence that supports the defense is arguably another reason why the trial court should have halted the trial and held a competency hearing. In some diminished-capacity cases, it may be necessary to do so. Here, however, the information before the trial court relevant to Odle's competency was, for the most part, remote and inconclusive. More importantly, neither Odle's conduct nor trial counsel identified competency as an issue.

This court concludes that, on the record in this case, a reasonable trial judge would not have had a substantial doubt about Odle's competency to stand trial. Odle's claim that the trial court violated due process by failing to hold a sua sponte competency hearing is therefore DENIED.

### Claims K and L

Odle claims that he was actually incompetent to stand trial and waive his rights. To support his claims, he offers declarations from Drs. Riley and Merikangas, two mental-health experts who examined Odle in 1991. These declarations state that Odle's ability to

---

3. "RT" refers to the reporter's transcript of Odle's capital trial. The report's transcript consists of separately number volumes 1, 1A, 1B, 2, 3A, 3B, 4A, 4B, 5A, 5B and 6 through 30.

4. "Ex." refers to exhibits submitted by Odle with the instant federal habeas petition.

understand the proceedings and consult with counsel were significantly impaired by his brain damage and neurological deficits. Exs. 29, 30. Odle also offers declarations from trial counsel, a pre-trial investigator and county jail inmates. These declarations give examples of Odle's difficulties, at the time of the trial, in responding appropriately to questions, focusing on issues being discussed, remembering things and expressing himself. Exs. 34, 35, 36, 49, 50.

Respondent argues that Odle's declarations do not support his claim that he was actually incompetent to stand trial. He also challenges the declarations of Drs. Riley and Merikangas as biased.

 This court applies to these claims the *Dusky* standard, discussed above: A defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402, 80 S.Ct. at 789. This standard applies to retrospective determinations of competency on federal habeas review. *See Hernandez*, 930 F.2d at 716. It also applies to determinations about whether a defendant is competent to waive certain rights. *See Godinez*, 509 U.S. at 397–98, 113 S.Ct. at 2686. A habeas petitioner is entitled to an evidentiary hearing on the issue of his competency to stand trial "if he presents sufficient facts to create a real and substantial doubt as to his competency." *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir.1985).

 Much of the discussion relating to Claim J, above, applies to Claims K and L as well. This court emphasizes again that none of the participants in Odle's trial questioned his ability to understand the proceedings or to communicate with his counsel at the time. *See Hernandez*, 930 F.2d at 718 ("significant" that no one at trial questioned defendant's

competency). In fact, trial counsel's declaration states that Odle was "an extremely cooperative and likable client who acquiesced in virtually all decisions that I made on his behalf." Ex. 34 at 5. These facts, and the lack of contemporaneous evidence that Odle was incompetent to stand trial, are accorded considerable weight. *See Moran*, 57 F.3d at 696.

 In the context of actual-incompetency claims, however, this court must also consider facts not presented to the trial court. *See Boag*, 769 F.2d at 1343. Much of the evidence that Odle now identifies as indicative of his incompetency arose either many years before trial or many years after it. Odle's brain injury and subsequent institutionalizations date from the mid–1970s. *See Boag*, 769 F.2d at 1343 (discounting suicide attempts that occurred long before trial). The expert declarations, by contrast, were based on interviews conducted almost ten years *after* the trial. The declarations from those around Odle at the time of his trial— counsel, a defense investigator and the two county jail inmates—do not lead this court to doubt that Odle had a rational understanding of the proceedings against him.

 For the reasons discussed above, Odle is not entitled to an evidentiary hearing, or habeas relief, on these claims. The facts he has presented do not create a real and substantial doubt about his competency. And assuming the truth of his declarations, Odle has not convinced this court by a preponderance of the evidence that he was actually incompetent to stand trial or waive his right to be present.[5] *See McKenzie*, 27 F.3d at 1418–19. For these reasons, Claims K and L are DENIED.

### Claims M and N

Odle claims that newly discovered evidence of his mental impairment and intoxication demonstrates that he could not have formed

---

5. This court previously held that Odle's "absence from the courtroom was harmless beyond a reasonable doubt." *See Odle*, 754 F.Supp. at 769. The Ninth Circuit subsequently held that the appropriate harmlessness analysis for this type of claim is whether the alleged error had a substantial and injurious effect on the verdict. *See He-*

*gler v. Borg*, 50 F.3d 1472, 1477 (9th Cir.1995). This standard is less strict than the standard this court used in its previous analysis. *See id.* at 1474. Thus, to the extent Odle challenges his waiver as unknowing and involuntary, any error clearly was harmless under the appropriate standard.

the mental state required for his murder convictions (Claim M). He rests his claim largely on the declarations of Drs. Riley and Merikangas, his ex-wife, a friend, and on a social history prepared by a social worker. Exs. 29, 30, 32, 38, 48. Odle also bases his claim on the new evidence, allegedly withheld by the state, that the testimony of the prosecution psychologist was unreliable because he was being investigated for fraud at the time.[6]

Odle also argues that newly discovered mitigation evidence demonstrates his "actual innocence" of the death penalty (Claim N). He supports this claim with the declarations described above and with other declarations from family members and friends.

 It is important to note that this is a substantive claim of actual innocence. His claim is therefore reviewed under the standard of *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), rather than the more lenient standard applied to a "procedural" claim of actual innocence offered to obtain federal habeas review of an independent constitutional claim that would otherwise be barred. *See Schlup v. Delo,* —— U.S. ——, —— – ——, 115 S.Ct. 851, 860–61, 130 L.Ed.2d 808 (1995); *Herrera,* 506 U.S. at 404, 113 S.Ct. at 862–63.

The precise nature of the showing that a petitioner must make to obtain federal habeas review of a substantive claim of actual innocence is not clear. *Herrera* suggests, however, that "the threshold showing ... would necessarily be extraordinarily high." *Herrera,* 506 U.S. at 417, 113 S.Ct. at 869; *see also Swan v. Peterson,* 6 F.3d 1373, 1384 (9th Cir.1993) (newly discovered evidence is grounds for federal habeas relief only if would probably lead to acquittal).

 Odle's allegations in support of Claims M and N do not rise to the requisite level of persuasiveness. Even assuming their truth, Odle's allegations in support of this claim do not amount to "a truly persua-sive demonstration of actual innocence under any reasonable standard." *Schlup,* —— U.S. at —— n. 32, 115 S.Ct. at 861 n. 32 (internal quotations omitted). Both actual-innocence claims are therefore DENIED.[7]

## Claims O, P, Q, and S

Odle raises four related claims about the conduct and competency of his pre-trial counsel, Patrick Meistrell. After a summary of the relevant facts, this order addresses each claim in turn.

### 1. Background

Odle's first attorney in the murder case against him was Patrick Meistrell, of the Contra Costa County Public Defender's Office. Before representing Odle, Meistrell had been on medical leave. He also had been involuntarily committed for a mental disability from mid–1977 to early 1978. Exs. 14–17, 20–24. The public defender's office was aware of Meistrell's mental illness in 1977. Ex. 14. At least two attorneys recognized a connection between Meistrell's breakdown and a complex homicide case he was handling at the time. Ex. 23 at 3–4, 8. In late 1977, Meistrell's doctor opined that Meistrell would be able "to fulfill any of the obligations and functions of attorney [sic] with the Public Defender's Office" by July 1978. Ex. 17 at 1. But attorneys in the office had doubts about whether he should be assigned another capital case. Ex. 23 at 5.

Meistrell nonetheless was assigned to represent Odle in 1980 and served as his counsel for approximately one year. During that time, he handled Odle's preliminary hearing and motions for discovery, suppression of evidence, severance, dismissal and change of venue. CT[8] 1–1143. From late 1980 until March 1981, Meistrell worked exclusively on Odle's case. Ex. 23 at 12, 14. During this time, he was on sabbatical from the public defender's office and also ending a live-in

---

**6.** This court has ordered an evidentiary hearing on the substantive claims challenging the credibility and reliability of Dr. Berg's testimony.

**7.** Even assuming the truth of Odle's allegations about Dr. Berg, they would not support Odle's claims that he was actually innocent of the murders and the death sentence. This court may thus deny the actual-innocence claims before the evidentiary hearing on the claims related to Dr. Berg.

**8.** CT refers to the clerk's transcript of Odle's trial.

relationship. Ex. 23 at 5, 10, 14. At some point, the public defender's office recruited William Lowe to assist Meistrell with his work on Odle's case.[9]

In January 1981, Meistrell began to experience manic feelings, similar to those he remembered from his 1977 illness. Ex. 23 at 16. Co-workers and friends noticed the recurrence of similar symptoms in late 1980 or early 1981. Ex. 23 at 6, 9, 10, 12. Meistrell had stopped taking lithium in early 1978, but he started again in March 1981. Ex. 19 at 1; Ex. 23 at 16.

Meistrell learned on March 20, 1981, that Odle's pre-trial writs had been denied. Ex. 23 at 15. He apparently took a street drug around this time and stayed awake for two days. Ex. 19 at 2; Ex. 23 at 14.

Around March 23, while he was still representing Odle, Meistrell was placed on medical leave by the public defender's office because of an unspecified incident. Ex. 18. He was committed at that time.[10] Ex. 23 at 15. In mid-April of 1981, he was diagnosed as suffering from manic depressive disorder, manic phase, and possible amphetamine psychosis. Ex. 19 at 2, 4. Meistrell's examining doctor concluded at that time that he was unfit to work, near-delusional and almost paranoid. *Id.* at 4–5.

On May 5, Meistrell resigned from the public defender's office, effective at noon. He nonetheless appeared in court for Odle at 11:00 a.m., introducing into evidence his own personnel file and letter of resignation. Meistrell maintained that he was still Odle's attorney. 5/5/81 RT 24. His comments in court were disjointed and random. This was Meistrell's last appearance as Odle's counsel.

At the end of March, the public defender's office filed an affidavit of conflict, seeking permission from the trial court to withdraw from the case for unspecified reasons. IV CT 1139. The court held a hearing to determine whether the affidavit stated good cause

for the office to withdraw.[11] An attorney from that office told the judge that Meistrell was ill and if another attorney were assigned to the case, "it would present serious problems when Mr. Meistrell returns to work." 3/31/81 RT 3. The public defender's office also offered in camera statements and a confidential memorandum of points and authorities in support of the affidavit. 4/9/81 RT at 9–10. The court did not find good cause for the affidavit of conflict and denied the office's request to withdraw. *Id.* at 17.

A month later, the office filed another affidavit seeking to withdraw from the case. This affidavit stated that the office could not represent Odle because it had a conflict of interest. 5/8/81 RT 32. The court accepted this affidavit on its face and permitted the office to withdraw. *Id.*

Later in May 1981, the court appointed William Gagen as Odle's new counsel. Gagen had represented Meistrell approximately four years earlier in proceedings, ultimately unsuccessful, to obtain his release from involuntary commitment. Exs. 20, 22. Gagen was appointed as counsel for Odle in part, as Gagen understood it, because his prior relationship with Meistrell and his geographical distance from the public defender's office would likely minimize Meistrell's interference with the case. 5/22/91 RT; Ex. 34 at 2. William Lowe continued to work as co-counsel. 5/22/81 RT 43; V CT 1521.

Gagen and Lowe then worked on Odle's case for two years before trial. After numerous pre-trial motions, jury selection began on June 6, 1983. 3A RT 8.

### 2. Claim O

Odle claims that he was denied his Sixth Amendment right to counsel because Meistrell was incompetent. Odle argues that Meistrell's mental illness prevented him from adequately representing Odle during motions to: dismiss the charges and the special cir-

---

9. Lowe's role is discussed more fully in this court's prior order. *See Odle,* 884 F.Supp. at 1414.

10. According to Meistrell, he went to the doctor because he believed that the end of the world had come and felt paranoid and frightened. He was

then put on medical hold at Pacific Medical Center and admitted voluntarily. Ex. 19 at 2.

11. Pre-trial proceedings related to the substitution of counsel were heard by a different judge from the one who presided over Odle's trial.

cumstances, change venue, sever counts, and suppress evidence. Odle also alleges that Meistrell failed effectively to investigate, prepare and present issues, including: Odle's competence to stand trial, the diminished capacity and intoxication defenses, and his ability to waive his constitutional rights.

 A criminal defendant is entitled to the effective assistance of counsel during critical pre-trial proceedings. *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 59–60, 77 L.Ed. 158 (1932); *United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967); *cf. United States v. Martini*, 31 F.3d 781, 782 (9th Cir.1994) (right applies to "counsel who represents the criminal defendant and helps to prepare his defense").

 An attorney who is mentally ill is not per se ineffective. *See Smith v. Ylst*, 826 F.2d 872, 876 (9th Cir.1987). Rather, a reviewing court must review the attorney's actual performance. "[I]f a mental illness or defect indeed has some impact on the attorney's professional judgment it should be manifested in his courtroom behavior and conduct of the trial." *Id.* Thus, the *Strickland* test for ineffective assistance of counsel applies to claims that counsel was incompetent because of mental illness. *Id.* at 875.

 Under *Strickland*, a petitioner must show 1) specific ways in which counsel's performance fell below an objective standard of reasonableness and 2) a reasonable probability that, but for counsel's errors, the jury would have reached a different verdict. *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984). This court must review counsel's performance deferentially, applying a strong presumption that it was within the wide range of competence. *Id.* at 689, 104 S.Ct. at 2065.

 Odle does not point to any specific inadequacy in, or prejudice from, Meistrell's handling of Odle's pre-trial proceedings. From this court's review of the record, it appears that Meistrell adequately represented Odle at the preliminary hearing and ade-

quately investigated, prepared for and presented pre-trial motions. For example, Meistrell appropriately objected to the testimony of and cross-examined prosecution witnesses and called witnesses for the defense at the preliminary hearing and the suppression hearing. He gathered and presented extensive evidence of media coverage in support of his motion for a change of venue. The record demonstrates that he argued the motions extensively and coherently. As a result, the trial judge dismissed a robbery count and severed a count alleging possession with intent to make an explosive device. IV CT 1042; II RT 330.

It is undisputed that Meistrell suffered serious mental breakdowns in 1977 and 1981. But aside from Meistrell's last appearance as Odle's counsel, this court has not found any indication that Meistrell's illness affected his in-court representation of Odle.

Odle also argues that Meistrell was ineffective for failing adequately to develop evidence on ballistics and on Odle's physical and mental condition at the time of the offense. With respect to the ballistics evidence, Odle has not indicated what investigation Meistrell should have done but did not do. Nor has he indicated what helpful evidence could have been found had Meistrell properly investigated. *See Hendricks*, 70 F.3d at 1042.

The bullet that killed police officer Swartz was never found. 19 RT 123. At trial, Gagen was able to cross-examine vigorously the criminalist who testified about the source and direction of the bullet, suggesting that it could have come from the weapon of another officer. 19 RT 105–25. Although he later conceded that Odle's bullet killed Swartz,[12] Gagen used the ballistics testimony to argue that the murder was not premeditated. 23 RT 54, 61, 63–65. Odle has not indicated how he suffered prejudice from Meistrell's alleged failure to investigate the ballistics evidence; after reviewing the record, this court finds none.

Meistrell's alleged failure to investigate Odle's physical and mental condition presents a more difficult question. Here, Odle does point to specific prejudice: He argues that

---

12. Odle also argues that this concession is an example of Gagen's constitutionally deficient rep-

resentation. This contention is discussed below (Claim YY).

Meistrell's inaction prevented Gagen from presenting at trial mental-health experts who had interviewed Odle. According to his declaration, Gagen believed this testimony would have little value because so much time had lapsed between the offenses and when he retained the experts. Ex. 34 at 5.

This court assesses below the reasonableness of Gagen's conduct and explanation. For purposes of this claim, however, this court notes that Meistrell's alleged failure to have Odle properly examined near the time of the offense has not prevented mental-health experts who examined Odle some ten years later from forming opinions about his mental state at the time of the offense. Cf. Evans v. Lewis, 855 F.2d 631, 637–38 (9th Cir.1988) (prejudice from counsel's failure to conduct prompt psychiatric testing where psychiatrist testifying later could not give opinion with a reasonable degree of medical certainty about defendant's mental state). In declarations before this court, two experts state that Odle could not have formed the requisite intent for first-degree murder, was unable to appreciate the criminality of his conduct or conform it to legal requirements, and suffered extreme mental and emotional disturbance. Exs. 29 at 17; 30 at 11–12. Their declarations undercut Odle's prime argument of prejudice.

Other facts suggest that Meistrell's conduct with respect to Odle's mental-health issues was not constitutionally deficient. Although the record is not entirely clear, it appears that Meistrell had Odle undergo an EEG in November 1980 and some neurobehavioral testing at a UCLA clinic in early 1981. Exs. 7, 23 at 9, 12, 15; 21 RT 154; see also 21 RT 42–43 (defense neurologist testified that 1980 EEG was consistent with the EEG he administered in 1982). It thus appears from the record that Meistrell at least began a reasonable investigation of Odle's mental and physical health.

Gagen replaced Meistrell in 1981 and had two years to prepare for trial. The two years further minimize any prejudice from Meistrell's alleged errors.

For these reasons, this court concludes that Meistrell's representation was neither constitutionally unreasonable nor prejudicial. Claim O is therefore DENIED.

### 3. Claim P

Odle claims that his trial counsel Gagen had an undisclosed conflict of interest because he had previously represented Meistrell in commitment proceedings. He argues that: 1) Gagen's duties of loyalty and confidentiality to his former client prevented him from challenging the competency of Meistrell's representation of Odle, as Odle's defense demanded; 2) Gagen's representation of Meistrell and then Odle thus constituted both a breach of loyalty and an unconstitutional conflict of interest; 3) Gagen's conflict affected his representation of Odle because Gagen knew of Meistrell's incompetency yet did not move for dismissal or reconsideration of rulings based on Meistrell's work; and 4) on the advice of co-counsel William Lowe, Gagen did not redo any of Meistrell's deficient preparation or investigation.

 To show a Sixth Amendment violation based on conflict of interest, a petitioner must establish both an actual conflict of interest and an adverse effect on the lawyer's performance. See Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); Bonin, 59 F.3d at 825. An actual conflict "squarely places the interests of the client in opposition to those of the attorney, and is likely to compromise a reasonable attorney's ability to comply with his legal and ethical obligation to represent his client with undivided loyalty." Bonin, 59 F.3d at 827. The mere possibility of a conflict does not violate the Sixth Amendment; a petitioner must show that "counsel actively represented conflicting interests." Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719. A petitioner must prove an actual conflict by "a factual showing on the record." Morris v. California, 966 F.2d 448, 455 (9th Cir.1991).

 The court must then review the record to determine whether the alleged conflict influenced counsel's conduct. Sanders v. Ratelle, 21 F.3d 1446, 1452 (9th Cir.1994). A petitioner need show only that "some effect on counsel's handling of particular aspects of the trial was 'likely.'" United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir.1992)

(citing *Mannhalt v. Reed,* 847 F.2d 576, 583 (9th Cir.1988)). Once that showing is made, a petitioner need not show prejudice. *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19; *Sanders,* 21 F.3d at 1452.

The rule against conflicts of interest serves to protect confidential information obtained during the course of an earlier representation, ensure undivided attorney loyalty and guard against infringement of the right to cross-examination. *See Sanders,* 21 F.3d at 1452–53; *Fitzpatrick v. McCormick,* 869 F.2d 1247, 1251 (9th Cir.1989); *United States v. Allen,* 831 F.2d 1487, 1497 (9th Cir.1987); *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980). "The evil [in conflict-of-interest situations] ... is in what the advocate finds himself compelled to refrain from doing." *Allen,* 831 F.2d at 1497. An actual conflict may exist in a case of successive representation if the two cases are substantially related or if the attorney may be required to reveal any privileged communication or otherwise divide his loyalty. *See Maiden v. Bunnell,* 35 F.3d 477, 480 (9th Cir.1994); *Mannhalt,* 847 F.2d at 580.

Odle's claim presents a unique case of successive representation. Gagen's previous client Meistrell was not a co-defendant, victim, prosecutor or witness in Odle's case, as in other published opinions addressing conflict-of-interest claims. Rather, Gagen previously represented attorney Meistrell, who handled Odle's preliminary hearing and some of the pre-trial motions and investigation.

After reviewing the record, this court does not doubt that Gagen obtained confidential information about Meistrell's mental state during the course of his prior representation of Meistrell. *See* Ex. 34 at 3. Nor does the court doubt that Meistrell's breakdown made Gagen's representation of Odle more difficult: Gagen could not talk to Meistrell about the work that he had done or discuss areas of investigation to pursue. *See id.* at 2–4.

These facts do not establish an actual conflict. The proceedings to obtain Meistrell's release from involuntary commitment were related only remotely, if at all, to Odle's capital case. Meistrell's mental state had little bearing on Odle's case once Gagen re-

placed Meistrell as counsel. Gagen did not need to "undermine, criticize, or attack his ... own work product from the previous case" in order to represent Odle. *Maiden,* 35 F.3d at 481. Had Gagen believed that reconsideration of earlier motions made by Meistrell was warranted, he could have made such a motion without implicating any privileged information about Meistrell. Odle's allegations amount to, at best, "a remote possibility of a conflict and not an actual conflict." *Bonin,* 59 F.3d at 827.

Assuming an actual conflict, however, the essential question is whether the conflict "significantly worsen[ed] counsel's representation of the client before the court or in negotiations with the government." *United States v. Mett,* 65 F.3d 1531, 1535 (9th Cir.1995). This court finds no evidence in the record of any adverse effect. *See Maiden,* 35 F.3d at 482 (petitioner bears burden of indicating specific adverse effect in counsel's conduct); *Morris,* 966 F.2d at 455 (bare allegation of conflict of interest does not entitle petitioner to evidentiary hearing); *United States v. Mims,* 928 F.2d 310, 313 (9th Cir.1991) (no showing on the record that multiple representation had adverse effect).

As discussed above, Meistrell represented Odle competently until his last appearance on Odle's behalf. It is thus unremarkable that Gagen did not move for reconsideration of what Meistrell had done. The record shows that Gagen did, in fact, redo some of Meistrell's work. For example, he moved for a change of venue and had an EEG test done on Odle even though Meistrell had already taken these steps. Furthermore, Gagen sought and obtained a two-year continuance to prepare for trial. 5/22/81 RT at 42. There is no indication in the trial record or in Gagen's declaration that his representation of Odle was restrained in any way because of confidences he learned from Meistrell.

Because Odle has not met his burden of showing an actual conflict and a likely adverse effect, Claim P is DENIED.

### 4. Claim Q

Odle claims that the Contra Costa County Public Defender's Office failed to en-

sure that he received adequate representation. Odle argues that the office denied him various constitutional rights when it appointed as his counsel Meistrell, whom the office knew or should have known was not mentally competent. He also contends that the office prejudiced Odle by withdrawing as counsel, rather than appointing another of its attorneys, when Meistrell could no longer represent him.

The legal basis for this claim is not clear. But Odle's argument that the office rendered ineffective assistance of counsel under *Strickland* fails on the prejudice prong: Because Meistrell provided constitutionally adequate assistance, as discussed above, any error the office made in assigning him to Odle's case did not prejudice Odle. Odle has not alleged how he was prejudiced by the office's withdrawal, and Gagen and Lowe had two years to prepare for trial. For these reasons, this court DENIES Claim Q.

#### 5. Claim S

Odle makes four arguments that the trial court's actions denied him effective counsel.

■■■■ First, he argues that the trial court knew of Meistrell's history of mental illness yet failed to hold a hearing to evaluate his competency. "[W]hen there is a question about a defense attorney's mental competence, a hearing is required when there is substantial evidence that an attorney is not competent to conduct an effective defense." *Smith*, 826 F.2d at 877. However, there is no evidence that the trial court was aware of Meistrell's prior breakdowns or the mental problems he experienced shortly before he was replaced as Odle's counsel. *Cf. id.* at 874 (defendant moved for substitute counsel based on counsel's erratic behavior). As discussed above, Meistrell's behavior and his conduct of Odle's defense up to that time did not suggest incompetency. The trial court

had no duty to hold a hearing sua sponte on Meistrell's mental competency.

■■■■ Second, Odle argues that the trial court deprived him of effective counsel by allowing the public defender's office to withdraw when it had no actual conflict of interest.[13] The Sixth Amendment does not give criminal defendants an absolute right to the appointed counsel of their choice. *See Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988); *United States v. Lillie*, 989 F.2d 1054, 1055 (9th Cir.1993). A trial court may substitute even retained counsel if it finds a conflict of interest or a possible improper disclosure of confidential communication. *See Thomas v. Municipal Court of Antelope Valley Judicial District of California*, 878 F.2d 285, 288 n. 3 (9th Cir.1989); *United States v. Vargas-Martinez*, 569 F.2d 1102, 1104 (9th Cir.1978). Here, the trial court may have acted improperly by not inquiring into the conflict of interest alleged by the public defender's office. Under the circumstances, however, its substitution of Odle's counsel did not violate any constitutional right.

■■■■ Third, Odle claims that the trial court denied him his right to be represented by Meistrell, his counsel of choice,[14] even though Odle contends in this petition that Meistrell was incompetent. As noted above, a criminal defendant does not have an unqualified Sixth Amendment right to the appointed counsel of his choice. *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697; *Lillie*, 989 F.2d at 1055. Nor does the Sixth Amendment guarantee a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983). A trial court may order substitute counsel against a defendant's wishes for proper reasons. *See, e.g., id.* (counsel hospitalized for emergency surgery); *Vargas-*

---

**13.** For a summary of the facts relevant to this claim, *see Odle*, 884 F.Supp. at 1414 and n. 8.

Odle also contends that the trial court erred by allowing co-counsel William Lowe, who had initially been appointed by the office, to continue representing him if a conflict with the office did exist. Because this court has found that Lowe's continued representation did not create a conflict of interest (*see Odle*, 884 F.Supp. at 1414), the

trial court did not violate Odle's constitutional rights by approving Lowe as co-counsel when Gagen was appointed.

**14.** Odle insisted, unequivocally, that he wanted Meistrell to represent him (*see* 4/9/81 RT 10, 14–15; 5/8/81 RT 33, 34; 5/22/81 RT 38; III RT 439), although he did eventually agree to Gagen's appointment. II RT 441.

*Martinez,* 569 F.2d at 1104 (counsel might disclose confidential communications from co-defendant). In light of Meistrell's resignation from the public defender's office and his behavior at his last appearance on behalf of Odle, this court has no doubt that the trial court properly ordered substitute counsel. Odle's constitutional rights were not violated by the substitution.

Finally, Odle contends that the trial court knew or should have known of the conflict of interest created by the appointment of Gagen. The trial court had a duty under the Sixth Amendment to inquire into Gagen's appointment if: 1) there was a possibility that Gagen's former representation of Meistrell conflicted with his representation of Odle, and 2) the trial court knew or reasonably should have known of the conflict. *See Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717–18; *Holloway v. Arkansas,* 435 U.S. 475, 485, 98 S.Ct. 1173, 1179, 55 L.Ed.2d 426 (1978); *United States v. Allen,* 831 F.2d 1487, 1494 (9th Cir.1987).

It is unclear from the record whether the trial court knew of Gagen's prior representation of Meistrell. Odle never brought the Gagen–Meistrell relationship to the trial court's attention. And there is no indication that Gagen ever disclosed it to him. Nor is there any on-the-record discussion of the issue, either in the trial court or in the proceedings before another judge to consider substitution of counsel. In his declaration before this court, Gagen states that he believes he was asked to represent Odle in part because of his prior representation of Meistrell. Ex. 34 at 2. He does not say whether he discussed his relationship with Meistrell with the trial court. The judge who presided over the substitution-of-counsel proceedings noted that she had approached Gagen about representing Odle, but she did not mention any reason for his appointment. 3/31/81 RT 4.

Regardless of whether the trial court knew or should have known that Gagen previously represented Meistrell, this court has concluded above that there was no constitutional conflict. Odle thus cannot show that the trial court violated his constitutional rights by failing to inquire into a possible conflict of interest.

■ For these reasons, Claim S is DENIED.[15]

### *Claim YY*

Odle claims that trial counsel William Gagen provided constitutionally defective and prejudicial representation at both the guilt trial and the penalty trial. In support of his claim, Odle alleges numerous specific deficiencies. After a brief summary of the applicable legal principles, this order discusses these allegations in turn.

#### 1. Legal standard

■ Claims of ineffective assistance of counsel at both phases of a capital trial are governed by the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* trial counsel has rendered constitutionally ineffective assistance if 1) his performance fell below an objective standard of reasonableness and 2) there is a reasonable probability that, but for counsel's errors, the jury would have reached a different verdict. *Id.* at 688, 694, 104 S.Ct. at 2064–65, 2068; *Hendricks,* 70 F.3d at 1036.

■ In reviewing counsel's performance, this court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. It must also gauge counsel's conduct in light of all the circumstances and from counsel's perspective at the time of trial. *Id.* at 688–89, 104 S.Ct. at 2064–65. Trial counsel will be found ineffec-

---

**15.** Amid his allegations of ineffective assistance of counsel, Odle also argues that the state denied him reasonably competent psychiatric assistance. His allegations do not establish that the state denied him an appropriate examination by a competent mental-health expert. Gagen presented two expert mental-state witnesses at the guilt trial: neurologist Holtz and psychiatrist Thompson. Odle makes no claim that the state denied him funds or access to these or other mental-health experts. *See Harris v. Vasquez,* 949 F.2d 1497, 1516 (9th Cir.1990). He thus has not established a constitutional claim.

tive, however, where he "neither conducted a reasonable investigation nor demonstrated a strategic reason for failing to do so." *Sanders*, 21 F.3d at 1456.

■ This court need not analyze the reasonableness of counsel's performance if it concludes that petitioner cannot show prejudice. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069–70; *Williams*, 52 F.3d at 1470. Similarly, if it is clear that counsel's conduct was reasonable, this court need not determine whether any errors were prejudicial. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069–70; *Hendricks*, 70 F.3d at 1039.

2. Guilt trial

■ Odle claims that trial counsel provided unconstitutionally deficient and prejudicial representation by inadequately investigating and presenting evidence of his mental state at the time of the offense. After reviewing the trial record and Odle's exhibits, this court is convinced that Gagen's conduct was not unreasonable.

It is clear that Gagen obtained, reviewed and introduced the necessary mental-health records. *See* 21 RT 98, 109; CT 1543–45; Exs. 1, 2. He had an EEG test done. 21 RT 26–27. He decided that a mental-health examination would not be of much value because considerable time had passed since the offense. Ex. 34. Based on this investigation and strategic decision, Gagen reasonably chose a diminished-capacity defense based on Odle's brain injury.

Gagen pursued this defense consistently throughout the trial. He presented extensive guilt-trial testimony—lay and expert—about Odle's brain injury and subsequent mental state from: 1) Dr. Blum, the neurosurgeon who operated on Odle after his 1973 accident; 2) Dr. Holtz, who reviewed Odle's EEGs; 3) Dr. Thompson, a psychiatrist; and 4) Odle's wife Glenda. 20 RT 15–56, 82–130; 21 RT 12–161; Ex. 38. Building on their testimony, Gagen argued that the jury should consider Odle's post-accident history to determine his capacity to form the necessary intent. *See, e.g.*, 23 RT 36, 44.

This court also notes that Odle's mental deficiency was not subtle; it was not the kind

of mental illness that requires a battery of psychologists and psychiatrists to identify and explain. *Cf. Bonin*, 59 F.3d at 832–33 (conflicting and speculative expert testimony about psychiatric diagnosis and effects). Odle had had a lobectomy. His brain injury was patent, and Gagen reasonably chose to focus on the fact of the injury and the effects it had on Odle's behavior and mental ability. As he said in his opening statement,

I will tell you right now that this is not a Twinkie defense. I'm not going to bring in any experts talking about any change in Jim Odle's eating habits or anything like that.

What we have in this case, simply stated, is a man who had part of his brain removed in a surgery in 1973. Simply stated, that's what the evidence is.

20 RT 9.

Reviewing trial counsel's performance deferentially and from his perspective at the time, this court cannot conclude that his handling of the guilt-trial mental-state evidence was constitutionally deficient.

■ Odle also argues that Gagen was ineffective for failing to investigate and present to the trial court evidence that Odle was incompetent to stand trial. As outlined above, Gagen conducted a substantial investigation into Odle's mental state. Gagen states in his declaration that Odle was cooperative; he apparently was aware of what was going on, although preoccupied and afraid of losing control. Ex. 34. Further, this court has concluded that Odle was not actually incompetent to stand trial. For these reasons, the court concludes that Odle has not established that Gagen's representation on the competency issue was either unconstitutionally deficient or prejudicial.

Whether the evidence of Odle's mental condition is given the label of "incompetency to stand trial," "diminished capacity defense," or "mitigation on penalty," the fact remains that Odle's mental condition was focused on by defense counsel and several experts. Odle's lobectomy was patent and was the subject of evidence at trial. The jury rejected it. This court does not doubt that 15 years later, looking through a "re-

trospectoscope," some other attorney or psychiatrist might do it better. But that, of course, is not the standard. *See Strickland,* 466 U.S. at 689–90, 104 S.Ct. at 2065–66. The attorneys *did* identify Odle's mental problem, had examinations conducted, and presented evidence on Odle's mental state. This court cannot conclude that something more was required by the United States Constitution.

■■■■ Odle argues that his trial counsel did not adequately prepare, support and present the motions for change of venue.[16] He contends specifically that counsel were ineffective for failing to survey members of the community to document their exposure to prejudicial publicity. According to Odle, the prosecution exploited this failure in its opposition to the motions.

This court concludes that Odle has not shown prejudice from counsel's preparation or presentation of the motions for change of venue.[17] As noted in this court's prior order, Odle was not denied a fair trial when the state courts rejected the motions. *See Odle,* 884 F.Supp. at 1421–22. Furthermore, it is unlikely that a community survey would have affected the state courts' decision. The trial court questioned venire members individually about their awareness of the case. *See id.* at 1421. Having heard the responses of potential jury members on their actual exposure to publicity, the trial court would not have given much weight to a community survey. In denying Odle's writ of mandate, the California Supreme Court also identified actual demonstrations of juror prejudice as revealed during voir dire, rather than community surveys, as critical to a change-of-venue motion. *Odle v. Superior Court,* 32 Cal.3d 932, 945–56, 187 Cal.Rptr. 455, 654 P.2d 225 (1982). For these reasons, it is not reasonably probable that the motions would have succeeded had counsel conducted a community survey.

■■■■ Odle argues next that Gagen should have filed a motion to dismiss based on his knowledge that Meistrell had a mental illness that would have affected his preparation of the case. He also contends that Gagen should have redone the pre-trial investigation and preparation that Meistrell had done.

This court concludes that Gagen's conduct upon taking the case from Meistrell was not unreasonable or constitutionally deficient. Odle does not specify the legal standard that would govern a motion to dismiss under these circumstances. Whatever the standard, it seems clear that the motion would not have been granted. Substitutions of counsel occur routinely, and the remedy is not dismissal but continuance. Here, Gagen appropriately asked for and was granted a continuance; he had two years from the time he was appointed to the time of trial. 5/22/81 RT at 42. Because it is unlikely that a motion to dismiss would have succeeded, this court finds no prejudice.

It is true that Gagen recognized serious problems with Meistrell's work: Meistrell's files were disorganized, and he had not settled on a coherent defense or developed key ballistic and mental health evidence. Ex. 34 at 5. As noted above, Gagen did in fact redo some of Meistrell's motions and investigation. And as this court has found, Meistrell provided constitutionally competent representation until the very end of his work on Odle's case. Also, Gagen took the eminently reasonable step of insisting on adequate time to prepare the case. For these reasons, Gagen did not render constitutionally defective assistance by not redoing all of Meistrell's work.

■■■■ Odle contends that Gagen failed adequately to investigate and present a voluntary intoxication defense. Gagen presented, through defense witnesses and through cross-examination of prosecution witnesses, substantial evidence of Odle's drug and alcohol use in general and at the time of the

---

16. Odle presumably challenges the conduct of both Meistrell and Gagen on this issue; he does not specify, but both counsel filed change-of-venue motions.

17. By resting its decision on a prejudice analysis, this court does not suggest that the performance of counsel was deficient. Gagen and Meistrell

both presented to the trial court extensive exhibits and briefing on the motions. They pursued the issue to the California Supreme Court. Their overall presentation of the motions was certainly within the wide range of professional competency.

Aguilar offense. *See, e.g.,* 15 RT 12–13, 113; 16 RT 12–13; 20 RT 36; 20 RT 102; 21 RT 5–7. Defense experts Blum, Holtz and Thompson also testified about the harmful effects of alcohol on people with brain damage like Odle's. *See* 20 RT 56; 21 RT 46–47, 158; *see also* 22 RT 66 (on cross-examination, even prosecution expert Berg agreed that people with brain injury should limit alcohol use). After reviewing the record, this court concludes that Odle cannot show prejudice from Gagen's failure to present additional evidence of intoxication or drug use.

■ This court also finds unpersuasive Odle's claim that Gagen was ineffective for failing to order and present independent tests showing Odle's drug and alcohol levels at the time of the offenses.[18] Odle has not alleged what such tests might have found or argued how they would have affected the outcome, given the other evidence of his drug and alcohol use presented at trial. *See Hendricks,* 70 F.3d at 1042. This court thus concludes that Odle has not shown prejudice from Gagen's allegedly deficient performance.

■ Odle next argues that Gagen was ineffective for presenting the testimony of Drs. Blum and Thompson, who had supervised Odle's post-accident medical and psychiatric care.[19] He contends that their testimony was biased because the doctors had an interest in portraying their treatment of Odle as adequate.

Gagen's decision to present the testimony of these doctors was clearly reasonable. Dr. Blum, in particular, testified persuasively about Odle's post-accident mental impairment. 20 RT 27–56. Further, Odle has not

met his burden of showing prejudice from the doctors' testimony.

Odle contends that Gagen failed to impeach Bryan Odle, his accomplice in the Aguilar offense. As discussed below, Bryan testified extensively about his plea agreement, and Gagen cross-examined him in detail. 15 RT 136–201; 16 RT 1–43. Odle does not support his claim with any specific examples of inadequacy in, or prejudice from, counsel's performance. This court therefore rejects this aspect of his ineffective-assistance claim.

■ Odle argues that Gagen was ineffective for failing to object to or strike the admission of certain evidence. This evidence includes: a polygraph examination of Terry Whitworth, who had fought with murder victim Aguilar on the evening of her death; Aguilar's and others' fear of Odle; Bryan's lack of convictions; a pathologist's opinion on ballistics; testimony about Odle's incriminating statement to inmate and alleged police agent Scudder; and a sheriff's testimony about Odle's statement that he deserved the death penalty. These were evidentiary issues, and objections may not have been sustained. After reviewing the record, this court concludes that Odle cannot show any prejudice from these alleged failures to object, even if erroneous.

Odle contends that Gagen should have objected to various instances of prosecutorial misconduct. This court rejects the substance of these allegations of prosecutorial misconduct below (Claim VV), and in its prior order; *see Odle,* 884 F.Supp. at 1431–32 (Claims WW and XX). For the reasons discussed there, the court concludes that Odle was not

---

18. The Aguilar murder occurred on April 29, 1980. The Swartz murder took place on May 3, 1980, shortly before Odle was arrested. All of the eyewitness testimony about Odle's intoxication related to the Aguilar offense; there was no suggestion at trial that Odle was under the influence at the time of the Swartz offense.

The prosecution presented testimony at trial about blood and urine tests taken on May 6 and 7, 1980. The tests found no alcohol, amphetamines, PCP, downers, antihistamines or antidepressants. The prosecution did not test for the presence of acid or LSD. 18 RT 158; 19 RT 2–5.

19. Dr. Blum, a neurosurgeon, performed two surgeries on Odle after his accident. 20 RT 21, 38. He also saw Odle several times in the neurosurgical clinic and the psychiatric ward. 20 RT 28, 30, 32, 34–38.

Dr. Thompson served as program chief for the Contra Costa Community Mental Health Services from 1967 to 1973. 21 RT 95. Odle visited Contra Costa clinics that Thompson supervised in December 1973. 21 RT 117–21. It appears from the record that Dr. Thompson never consulted with or treated Odle.

prejudiced by Gagen's failure to object to the conduct of the prosecution.

■ Odle argues next that Gagen was ineffective for failing adequately to investigate, question and strike a juror who disclosed to the court that she was acquainted with a prosecution witness. The related substantive claim of juror misconduct and the relevant facts are discussed below (Claim HH). Gagen conducted a reasonable voir dire of the juror in this situation. *See* 13 RT 2–3. Nothing in the juror's responses would have caused a reasonable attorney to doubt that she could be an unbiased juror. Furthermore, Odle has not shown or even alleged prejudice; he offers no evidence that she was, in fact, biased for the prosecution or against Odle.

■ Odle also contends that Gagen unreasonably stipulated or conceded that: 1) the police had probable cause to arrest him; 2) Swartz was acting in duty as an officer at the time of his death; and 3) there was no reasonable doubt that Odle's bullet, and not the bullet from another officer, killed Swartz. Odle has offered no evidence that casts doubt on the prosecutor's ability to show that the police had probable cause to arrest him or that Swartz was acting in his duty as a police officer when he was shot. He thus has not established prejudice.

■ Odle's argument that Gagen should not have conceded that Odle's bullet killed Swartz carries more weight. As Gagen initially argued, there are serious questions about the origin of the bullet, which was never found. 19 RT 47, 66–67, 123. Based on the testimony of prosecution witnesses, Gagen suggested that the bullet could have ricocheted and that it might not have come from Odle's weapon. 23 RT 54. He then told the jury, however, "[T]here is no other reasonable explanation but that the projectile that went through Officer Swartz came from the weapon of Jim Odle." 23 RT 54–55.

Because the evidence could have supported a contrary argument, Gagen's concession, standing alone, might have been unreasonable. On the other hand, it appears from the record that Gagen used the concession not only to gain credibility with the jury but also to make an argument that was stronger and more consistent with his overall strategy. Specifically, he used the shooting testimony to argue that Odle shot without premeditation. 23 RT 55–66.

■ Where it appears that counsel's alleged error was the result of a "difficult but thoughtful tactical decision, [this court] must presume that counsel's conduct was within the range of competency." *Harris v. Pulley*, 885 F.2d 1354, 1368 (9th Cir.1988). It is clear from the record here that Gagen recognized that the evidence was inconclusive but deliberately chose to concede that the fatal bullet came from Odle's gun. This strategic decision was not clearly unreasonable under the circumstances. Gagen's conduct thus was not constitutionally deficient.

Odle also argues that Gagen was ineffective because he did not request instructions on involuntary manslaughter and the use of predisposition evidence. This court held in a previous order that the failure to give a predisposition instruction in this case did not violate due process. *See Odle*, 884 F.Supp. at 1415–16. For the reasons discussed therein, Gagen's failure to seek this instruction did not prejudice Odle.

■ Odle's argument about the involuntary manslaughter instruction is unpersuasive for different reasons. Gagen explained to the trial court why he was not requesting instructions on involuntary manslaughter and involuntary manslaughter due to diminished capacity. He said,

> Your Honor, I think I should say for purposes of the record that after carefully considering the state of the evidence, I think the numbered instructions that I am asking not be given with reference to involuntary manslaughter and heat of passion *would do nothing but confuse the jury and would have absolutely no advantage to the defendant whatsoever*, and it is with that in mind that I have so requested to the Court that they not be given.

22 RT 136–37 (emphasis added).

■ It is clear from the record that Gagen made a strategic decision not to ask for the instructions. His explanation to the trial

court suggests that Gagen recognized that the evidence would have supported an involuntary manslaughter instruction. It thus appears that he made a tactical choice based on a proper understanding of the law and the facts. *Cf. Siripongs v. Calderon,* 35 F.3d 1308, 1314 (9th Cir.1994) (record contains no evidence from which district court can infer that trial counsel made informed, tactical decision). Such choices are "virtually unchallengeable." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Odle has not offered this court any reason to doubt that Gagen made a reasonable tactical decision under the circumstances.

██ Odle's final contention of ineffective assistance of counsel at the guilt trial concerns Gagen's advice to Odle not to testify. Gagen initially told the trial court that he wanted Odle to testify about only one of the two murders. He stated that he could not think of a way to allow Odle to testify about the Swartz offense but shield him from cross-examination about the Aguilar offense. Thus, Gagen ultimately advised Odle not to testify at all.

Odle does not allege prejudice from Gagen's failure to pursue tactics that would have allowed him to testify about only one of the murders. He presents no declarations or evidence about what he would have said had he testified. Odle does not point to any issues on which his testimony would have been helpful. Odle thus has not met his burden with respect to prejudice. *See Hendricks,* 70 F.3d at 1042 (petitioner cannot show prejudice without indicating what favorable evidence would have been presented).

### 3. Penalty trial

In its 1990 order and above, this court has addressed Odle's primary allegation of ineffective assistance of counsel at the penalty trial. *See supra* at 1375–76; *Odle,* 754 F.Supp. at 772–74. It discusses next his remaining penalty-trial ineffective-assistance claims.

Odle argues that Gagen was ineffective because he did not adequately investigate or move to suppress Odle's prior convictions that were offered in aggravation at the penalty trial. Odle says that the convictions were subject to suppression because he was not competent to plead guilty at the time.

██ This court has rejected Odle's substantive claims of incompetency (Claims K and L, above). As discussed above, neither the trial court, nor counsel, nor anyone involved in the earlier proceedings against Odle questioned his competency. In these circumstances, it is not reasonably likely that the trial court would have suppressed the priors based on Odle's incompetency to plead guilty. This court thus concludes that Odle has not shown prejudice from Gagen's failure to challenge the prior convictions.

██ Odle also argues that Gagen prejudicially failed to object to penalty-trial evidence of his misdemeanor conviction for battery. He contends that the conviction was irrelevant and discouraged the jury from determining for itself whether he had committed the offense. Even if Gagen's conduct was deficient, as alleged, Odle cannot show prejudice. On direct examination, the victim in the offense, Noble Flournoy, admitted that he was trying to "beat up on" Odle at the time. 27 RT 33. On cross-examination, Gagen elicited testimony that Flournoy had hit Odle on the head more than once with a pipe before Odle shot him in the buttocks. Flournoy also testified that he was accompanied by friends when he attacked Odle, who was alone, and that his injury was minor. 27 RT 35, 37. In light of this minimizing testimony from the victim and the other penalty-trial evidence before the jury, there is not a reasonable probability that the admission of Odle's misdemeanor guilty plea would have affected the outcome.

Finally, Odle claims that Gagen was ineffective for failing to seek a mistrial or prompt the court to correct various instances of alleged judicial and prosecutorial misconduct and juror bias. This court has addressed, in this and its prior orders, all these substantive claims of error. Because none of the substantive claims have merit, it is not reasonably probable that any steps Gagen could have taken to remedy these alleged errors would have affected Odle's sentence.

Considered individually or cumulatively, these alleged errors in Gagen's representation did not prejudice Odle. *Cf. Harris v. Wood,* 64 F.3d 1432, 1438 (9th Cir.1995) (finding cumulative prejudice from the "plethora and gravity of [trial counsel's] deficiencies").

### *Claim HH*

Odle argues five claims that his jury was biased.[20]

Odle first claims that the jury was biased because it included a juror who was acquainted with Officer Donohue, a prosecution witness. He argues that he is entitled to a new trial because the juror lied on voir dire and because counsel would have had a reason to challenge her for cause had she been honest. Respondent answers that the juror said she would not be biased against Odle and that trial counsel did not ask to have her removed from the jury. He also argues that this court must presume correct the trial court's implied finding that the juror was not biased.

The relevant facts are undisputed. The trial court asked the entire venire whether any of them knew any of the dozens of potential witnesses, including "Officer D. Donohue, Pinole Police Department." 2 RT 25. The juror at issue did not respond at the time.

Just before the trial started, however, she sent a note to the trial court stating that Officer Donohue worked with her husband. The trial court and counsel questioned her in chambers. In the note and in response to questions from Gagen, the juror said that she knew Donohue only by sight and had heard nothing positive or negative about him from her husband. She also stated that her impartiality would not be affected. 13 RT 1–3.

■ To prevail on a claim of juror partiality, Odle

must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984); *Tinsley v. Borg,* 895 F.2d 520, 524 (9th Cir.1990). The juror here did not indicate that she knew the officer when his name was read, among dozens of others, to the venire. 2 RT 25. It thus is arguable that she did not answer honestly a material question.

■ Fortunately, this court need not decide de novo about the juror's partiality. Under 28 U.S.C. § 2254(d), this court must in most cases presume correct the factual findings of a state court made in writing after a hearing on the merits. A state-court determination about the partiality of an individual juror is a question of historical fact generally entitled to the presumption of correctness. *See Tinsley,* 895 F.2d at 525.

The trial court here held a hearing on the juror's acquaintance with Donohue. Both parties were present and able to ask questions. There is a written record of the hearing. 13 RT 1–3. There is no explicit written finding about the juror's ability impartially to decide Odle's case. After questioning the juror, however, the parties and the court allowed her to sit on Odle's jury.

■ In situations such as this, this court may find that "a factual determination is implicit in the actions taken by a state court." *Knaubert v. Goldsmith,* 791 F.2d 722, 727 (9th Cir.1986); *see also Wainwright v. Witt,* 469 U.S. 412, 430, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985) (although trial court made no written findings, its finding of juror bias was "evident from the record"); *Tinsley,* 895 F.2d at 524–26 (denial of motion for new trial was implied finding of no juror misconduct). Because the trial court allowed the juror to sit, this court concludes that it made an implicit finding that she was not biased. This finding is presumed correct unless Odle shows by clear and convincing evidence that it was erroneous. 28 U.S.C. § 2254(d).

---

20. Odle also claims that his jury was biased by the presence of uniformed deputies guarding Odle during trial. This court granted summary judgment on this issue in a previous order. *See Odle,* 884 F.Supp. at 1423.

Odle has not offered, and the record does not indicate, any evidence to rebut the presumption. On the contrary, the record strongly suggests that the juror did not deliberately conceal her acquaintance with Donohue. *See Tinsley,* 895 F.2d at 526. During individual voir dire, the juror truthfully stated her husband's place of employment. 10 RT 2. When she realized that Donohue worked with her husband, she notified the court. 13 RT 1. During her initial and subsequent voir dire, she consistently maintained that she could be fair and impartial.

Odle has not rebutted the presumptively correct state-court finding that the juror was not biased. Nor is there any indication in the record, or in Odle's briefing, that her reason for initially not revealing her husband's connection to Donohue affected her impartiality or the fairness of the trial. *See McDonough,* 464 U.S. at 556, 104 S.Ct. at 850. This claim is therefore DENIED.

■ Odle next argues that because the jury had decided his guilt, it could not consider fairly at the penalty trial evidence of his unadjudicated felony offenses and a misdemeanor battery to which he pled guilty. But as the state points out, the United States Supreme Court has rejected similar claims, recognizing a state's "entirely proper interest" in having a single jury decide all the issues in a capital case. *Lockhart v. McCree,* 476 U.S. 162, 180, 106 S.Ct. 1758, 1768–69, 90 L.Ed.2d 137 (1986). Odle offers no legal or specific factual basis, and the court has found none, for his claim that his jury could not impartially determine his sentence.

■ Odle also claims that his jury was biased because 1) it was attended by a uniformed bailiff; 2) it witnessed a handcuffed defendant attempting to escape the courthouse; and 3) jurors believed that Odle could be paroled if they sentenced him to life without possibility of parole. Odle offers no relevant legal authority for any of these claims. He does not identify specific prejudice arising from these incidents. The only evidence he cites of the jury seeing the escape attempt

or believing Odle could be paroled are comments by Gagen during penalty-trial argument and the trial court during its hearing on Odle's motion to modify the verdict.

Odle has not established by a preponderance of the evidence that his jury was unconstitutionally biased. For this reason and the reasons discussed above, Odle's claim of jury bias is DENIED.

*Claim KK*

Odle raises two challenges to the admission in the penalty trial of evidence that he possessed a pipe bomb. First, he claims that the prosecution introduced this evidence in aggravation without providing adequate notice. Second, he claims that there was insufficient evidence that his conduct with respect to the pipe bomb constituted a crime. The state responds that Odle had actual notice of the pipe-bomb evidence because it had been discussed at the guilt trial. The state does not respond to the insufficient-evidence argument.

The prosecutor originally charged possession of bomb materials as a substantive offense and presented related evidence at the preliminary hearing. III CT 777, 824; 25 RT 30. At that time, the prosecution provided discovery related to the pipe bomb. 25 RT 30–31. Before trial, the pipe-bomb count was severed, over the prosecution's objection. 25 RT 29. The amended information for Odle's capital case omitted the bomb-possession charge. V CT 1491–96.

The prosecution did not include the pipe bomb allegation in its statutory pre-trial notice of evidence that it intended to present as penalty-trial aggravation.[21] The notice included a general phrase, mirroring the language of the statute, that the prosecution would present evidence in three categories, including "[a]ll prior criminal activity of James Odle which involved the use or attempted use of force or violence or which involved the express or implied threat to use force or violence." IV CT 1083. The notice listed six "specific incidents known to the

21. California Penal Code § 190.3 states, in relevant part:

[N]o evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time as determined by the court, prior to trial.

prosecution at this time." *Id.* The notice was filed on March 2, 1981, more than two years before trial.

The prosecution raised the issue next at the guilt trial, moving to introduce evidence of the pipe bomb. 25 RT 30. After argument by counsel, the trial court excluded any reference to the bomb in the guilt trial, concluding that it would be more prejudicial than probative. 13 RT 9.

Odle's trial counsel became aware some time before July 19, 1983, that the pipe bomb evidence might be introduced at the penalty trial.[22] 25 RT 31; VI CT 1723. Odle's counsel objected to admission of the evidence because the prosecutor had not provided the notice required by statute. *Id.* The trial court denied Odle's motion to exclude the evidence from the penalty trial, finding that counsel had notice from the initial charging document and from the guilt-trial discussions about the pipe bomb. According to the trial court, this notice satisfied the intent of the statute by giving trial counsel a reasonable time to prepare. 25 RT 32.

■■■ "The Sixth Amendment ... guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of the charges against him." *Calderon v. Prunty*, 59 F.3d 1005, 1009 (9th Cir.1995). This guarantee applies to the states through the Due Process Clause of the Fourteenth Amendment. *In re Oliver*, 333 U.S. 257, 273–74, 68 S.Ct. 499, 507–08, 92 L.Ed. 682 (1948). In analyzing lack-of-notice claims, the Ninth Circuit focuses on whether the defendant actually had sufficient notice to present a defense, ensure adversarial testing and produce an acceptable record. *See, e.g., Morrison v. Estelle*, 981 F.2d 425 (9th Cir. 1992); *Sheppard v. Rees*, 909 F.2d 1234, 1235–37 (9th Cir.1989). The defendant may receive notice from the charging document or statements of or evidence introduced by the prosecution. *See, e.g., Calderon*, 59 F.3d at 1009; *Stephens v. Borg*, 59 F.3d 932, 936 (9th Cir.1995); *Morrison*, 981 F.2d at 428.

■■■ As discussed above, Odle learned during the guilt trial that the prosecution would introduce aggravating pipe-bomb evi-

dence at the penalty trial. Odle thus had the opportunity to prepare for and subject this evidence to adversarial testing. *Cf. Sheppard*, 909 F.2d at 1237. Further, the record shows that the prosecution sought to introduce evidence of the pipe bomb at every prior stage of the proceedings, and trial counsel fought as vigorously to have it excluded. Odle was not ambushed with this evidence. *See Calderon*, 59 F.3d at 1010; *Stephens*, 59 F.3d at 935; *Morrison*, 981 F.2d at 428. This court thus agrees with the trial court that Odle received constitutionally adequate notice that evidence of the pipe bomb would be introduced at the penalty trial.

■■■ Odle also argues that there was insufficient evidence that the pipe bomb could explode. Thus, he contends, his conduct was not a crime and the evidence should not have been admitted in aggravation.

■■■ Evidence is constitutionally insufficient to support a conviction only if, viewing the evidence most favorably for the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Martineau v. Angelone*, 25 F.3d 734, 739 (9th Cir.1994).

Odle's jury was instructed on the elements of possession of bomb materials as follows:

> [E]very person who possesses any substance, material, or any combination of substances or materials with the intent to make any destructive device or any explosive ... is guilty of a felony. ¶¶ The term "explosive" includes ... smokeless powder.

29 RT 94–95. The prosecution presented uncontroverted testimony that a pipe found in Odle's car contained smokeless gunpowder. 26 RT 157. Two witnesses testified that Odle intended to use the bomb to kill someone. 26 RT 19–20, 100–01. Based on this testimony, a rational jury easily could have found the elements required for possession of an explosive.

As discussed above, Odle has not shown that he received constitutionally inadequate

---

**22.** The penalty trial began on July 20, 1983.

notice of the pipe-bomb evidence or that the evidence was insufficient to establish the aggravating offense. For these reasons, this court DENIES Claim KK.

### Claim PP

Odle claims that one prior conviction used to support the penalty-trial aggravating factor of prior felony convictions was unconstitutional. Specifically, he contends that he was not competent to plead guilty to the armed robbery. He also claims that the police withheld evidence that his co-defendant had confessed to planning and being the major participant in the offense. In support of this claim, Odle offers two declarations: 1) a psychologist's opinion, to a reasonable degree of scientific certainty, that Odle was most likely not capable of pleading guilty at the time, and 2) his co-defendant's statement that he tried to tell the police that he, not Odle, was the lead perpetrator of the robbery. Exs. 31, 46.

■ To prevail on his claim that his death sentence was based on an unconstitutional prior conviction, Odle must show that the conviction was unconstitutional and that his sentence was enhanced in reliance on the conviction. *See Campbell v. Kincheloe,* 829 F.2d 1453, 1461 (9th Cir.1987); *see also Johnson v. Mississippi,* 486 U.S. 578, 586, 108 S.Ct. 1981, 1986–87, 100 L.Ed.2d 575 (1988) (was unconstitutional conviction "decisive" in selection of sentence). This court may determine whether the conviction was used to enhance the sentence before addressing the constitutionality of the prior conviction. *See Campbell,* 829 F.2d at 1461.

■ The prior-felony aggravating factor in Odle's case was based on two prior felonies: the 1975 robbery Odle now challenges, and a 1972 conviction for burglary with a firearm. 29 RT 92. Thus, even if he had successfully challenged the 1975 conviction, the jury still could have included the prior-felony aggravating factor in its weighing process based on the 1972 conviction. *Cf. Johnson,* 486 U.S. at 586, 108 S.Ct. at 1986–87 (death sentence reversed because it was based on invalid conviction even though jury found two other unrelated aggravating circumstances that would support sentence). In addition, the prosecutor's argument about the prior convictions was minimal and factual. 29 RT 11–12, 29. *See Campbell,* 829 F.2d at 1461 (prosecutor only briefly mentioned challenged conviction during sentencing proceeding); *cf. Johnson,* 486 U.S. at 586, 108 S.Ct. at 1986–87 (prosecutor repeatedly urged jury to weigh invalid conviction).

This court cannot know for certain on which aggravating factors the jury relied in concluding that the aggravating factors outweighed the mitigating factors in Odle's case. Nor can this court know "the relative weight of the circumstances" that the jury considered. 29 RT 95–96. For the reasons discussed above, however, this court concludes that Odle's death sentence did not unconstitutionally rely on the robbery conviction. This court thus need not decide whether the conviction was in fact unconstitutional. Claim PP is therefore DENIED.

### Claim VV

■ Odle claims various instances of prejudicial prosecutorial misconduct that denied him a fair trial, an impartial jury, and reliable guilt and penalty verdicts. Prosecutorial misconduct rises to the level of a constitutional violation only if it so infects the trial with unfairness as to result in a denial of due process. *See Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Campbell,* 829 F.2d at 1457. With this general standard in mind, each instance of alleged misconduct is discussed below.[23]

Odle first argues that the prosecutor improperly withheld information that would have allowed Odle to exclude the testimony of his admission to a jailhouse informant, and that would have indicated that the bullet that killed police officer Swartz was fired by another officer. However, Odle does not offer evidence to support these arguments, and this court has found none in the record.

---

**23.** Odle also alleges prosecutorial misconduct with respect to the testimony of Dr. Berg. This court has granted an evidentiary hearing on two other claims relating to the prosecution's presentation of Berg's testimony; it will not at this time discuss these allegations of misconduct.

■ Odle also claims that the prosecutor improperly interfered with Bryan Odle's testimony by negotiating a plea agreement with him and by delaying disclosure of the agreement until shortly before the trial began. Both Bryan and his attorney testified about the plea agreement. 15 RT 136–77; 16 RT 1–51. Odle has offered no evidence that Bryan's testimony was false. Odle has not indicated how he was prejudiced by the alleged delay in completing and disclosing the plea agreement. Trial counsel had the opportunity to question Bryan and his attorney about the agreement both in chambers and before the jury. 15 RT 117–34. He did cross-examine Bryan extensively about his testimony about the Aguilar murder. 15 RT 177–201; 16 RT 1–43. On this record, this court concludes that neither the fact nor the circumstances of the plea agreement denied Odle due process.

Finally, Odle identifies as prejudicial misconduct eight statements the prosecutor made while examining witnesses or arguing to the jury:

■ In one instance, the prosecutor told witness William Moran that he could not testify about the pipe bomb at the guilt trial: "[T]hat is a problem with this half-assed system of ours." 14 RT 154. Odle does not show how this comment affected Moran's testimony or prejudiced Odle.

■ In another instance, the prosecutor objected to a question by trial counsel as "character assassination." 26 RT 93–94. The trial court overruled the prosecution's objection and later reprimanded him for criticizing trial counsel in front of the jury. 26 RT 94; 27 RT 9. Odle has not shown how this one hostile comment, during the course of an otherwise well-mannered trial, rendered that trial fundamentally unfair.

■ On cross-examination, the prosecutor asked Odle's wife if she would have conjugal visits with Odle if he were sentenced to prison. 28 RT 42. She answered that she would not, and trial counsel assured the jury in argument that Odle would not be allowed conjugal visits in prison. *Id.,* 29 RT 40. In light of these curative comments, Odle cannot show the requisite prejudice.

■ Odle also points to certain comments during the prosecutor's guilt-trial closing argument. He told the jury that "the community screams for [Odle to pay the 'just consequences of his act'] the souls of the victims scream for it, and their families scream for it." 23 RT 90–91. He also said convicting Odle of second-degree murder "would make the Dan White case a joke." 23 RT 91. These allegedly improper comments consume only four lines of the prosecutor's 23-page argument. The overwhelming majority of the argument properly focused on the evidence presented by both parties. 23 RT 68–91. The jury was properly instructed to decide based on the evidence, not the attorneys' arguments. 23 RT 94, 96. In light of these facts, this court concludes that Odle has not shown that the prosecutor's guilt-trial closing argument constituted prejudicial misconduct.

Odle also identifies as prejudicial misconduct four comments made during the prosecutor's penalty-trial argument:

First, he told the jury that the law does not say anything about whether the jury could consider sympathy for Odle's family. 29 RT 33. The prosecutor was correct to the extent that sympathy for the defendant's family is not a statutory mitigating factor. Also, the jury was properly instructed that it could consider any other extenuating circumstance—not only an excuse or justification but anything that "in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability." 29 RT 90. The jury was also instructed that it could consider sympathy or pity for Odle himself. 29 RT 91. In light of these instructions, Odle has not shown that the prosecutor's comment rendered his sentencing fundamentally unfair.

■ Second, the prosecutor argued during the penalty trial that Odle's brain damage and leadership role in the offense could be counted as aggravating factors. 29 RT 29–31. The California death penalty statute does not specify whether these factors, or their absence, may be considered in aggravation or mitigation. *See* Cal.Penal Code § 190.3. *But see People v. Whitt,* 51 Cal.3d

620, 654, 274 Cal.Rptr. 252, 798 P.2d 849 (1990) (statutory factors relating to extreme mental disturbance and mental disease or defect apply only in mitigation). Analyzing this statute, the United States Supreme Court noted with approval that it allowed the parties to make "wide-ranging arguments about whether the defendant deserves the death penalty." *Tuilaepa v. California*, —— U.S. ——, ——, 114 S.Ct. 2630, 2638, 129 L.Ed.2d 750 (1994). This court thus concludes that the prosecutor's argument was not prejudicial misconduct.

Third, the prosecutor told the jury that murder by bomb is a special circumstance under California law. 29 RT 17. The statement is substantially true. *See* Cal.Penal Code § 190.2(a)(4), (6) (murder by bomb concealed in building and by mail bomb). Furthermore, the comment was brief and presented in the context of a hypothetical situation that the jury knew was not true. Any impropriety in this comment did not render Odle's penalty trial fundamentally unfair.

■ Finally, the prosecutor argued at the penalty trial that the jury could consider sympathy—for Odle and for his victims—and that the victims were precious to their families. 29 RT 8, 25. The introduction of victim-impact evidence in a capital-case sentencing proceeding does not render the sentence unconstitutional. *See Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Furthermore, the trial court properly instructed the jury on the factors to consider in making its decision. 29 RT 88–97. In these circumstances, the prosecutor's comments did not deny Odle a fair penalty trial.

Odle has not shown that the prosecutor's comments, alone or in combination, rendered his trial fundamentally unfair. Claim VV is therefore DENIED.

### Claim CCC

■ Odle claims that the prosecutor's penalty-trial argument that Odle lacked remorse was prejudicial error. Specifically, he contends that the argument about remorse was actually a comment on his constitutionally protected decision not to testify, in viola-

tion of *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).

Odle did not testify at either phase of his trial. At the penalty trial, the prosecutor argued that Odle had not shown remorse for the offenses.

When you decide what should be done with his [sic] man ask yourself this: Say I have been instructed that we decide these cases on evidence, we decide on evidence from the guilt phase, and then we say has there ever been one iota, one scintilla, anything that shows that Jim Odle has ever expressed remorse or sorrow or regret for what he did to those two people? Never. Not any. Nothing. Not any.

In the penalty phase the opportunity for that type of evidence to come in when it's not admissible [sic]. Nothing.

I asked Glenda Odle at length, I gave her the opportunity to say what Jim Odle told her concerning this crime. If you told anybody that you are sorry and you have remorse for what you did, you are going to tell your ex-wife who you were still close to who would come to visit you in the jail.

She said the only thing he ever said is he was a participant in the crime.

But we have a couple of things in the other direction. We have Jim Odle a couple of days after his arrest saying, Yeah, I'm the guy that blew away that blankety-blank cop. That certainly doesn't show any remorse.

We have Jim Odle making that factual statement to the transportation deputies saying, Yes, I deserve what I'm going to get. He is talking about me, me Jim Odle. Yes. Jim Odle is very factual with it. He has accepted it. He deserves what he is going to get.

But that doesn't say he is sorry for the victims, that he is sorry for Rena's child, for Bernie's family, for the community. Not one scintilla of remorse has this man ever expressed that you have heard about or that any of us heard about. Nothing.

29 RT 33–35. The prosecutor also noted Odle's lack of remorse in his statement to the judge in opposition to Odle's motion to modi-

fy the sentence. VI CT 1766. In denying the motion, the trial court adopted the prosecutor's statement that "[t]here is absolutely no evidence in the record that Defendant has ever expressed remorse or sorrow for the victims or the families of either murder victim." VI CT 1799. There is no indication in the record that trial counsel objected to these statements.

The parties agree that a jury may consider a capital defendant's lack of remorse in fixing the penalty. *See Harris v. Pulley,* 885 F.2d 1354, 1384 (9th Cir.1988). His claim thus turns on whether the prosecutor's argument constituted an impermissible comment on Odle's declining to testify at trial.

In *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), the United States Supreme Court held that the Fifth Amendment prohibits a prosecutor from telling the jury that a defendant's silence is evidence of his guilt. *See also United States v. Kessi,* 868 F.2d 1097 (9th Cir.1989); *United States v. Bagley,* 772 F.2d 482 (9th Cir.1985). This prohibition applies to criminal trials in state court. *See Griffin,* 380 U.S. at 609, 85 S.Ct. at 1230. The Fifth Amendment privilege against self-incrimination also extends to the sentencing stage of a capital trial. *See Estelle v. Smith,* 451 U.S. 454, 462–63, 101 S.Ct. 1866, 1872–73, 68 L.Ed.2d 359 (1981).

"Comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Lincoln v. Sunn,* 807 F.2d 805, 809 (9th Cir.1987). A prosecutor may, however, comment on the failure of the defense to present evidence favorable to its case. Such remarks do not violate the Fifth Amendment unless they are phrased with the intent or natural effect of calling to the jury's attention the defendant's failure to testify. *See, e.g., United States v. Mende,* 43 F.3d 1298, 1301 (9th Cir.1995); *United States v. Mayans,* 17 F.3d 1174, 1185–86 (9th Cir. 1994).

Here, the prosecutor argued, permissibly, that there was no evidence of remorse. *See*

*Mende,* 43 F.3d at 1301; *Mayans,* 17 F.3d at 1185–86. He never suggested that remorse evidence would have had to come *from Odle;* on the contrary, he called the jury's attention to the testimony of Glenda Odle and the transportation deputies. *Cf. Lincoln,* 807 F.2d at 810 (prosecutor commits *Griffin* error by referring to absence of testimony that only defendant could have provided); *United States v. Tarazon,* 989 F.2d 1045, 1052 (9th Cir.1993) (same); *Lesko v. Lehman,* 925 F.2d 1527, 1544–45 (3rd Cir.1991) (*Griffin* error where prosecutor implied that capital defendant "had a moral or legal obligation ... to apologize for his crimes").

Reviewed as a whole, the prosecutor's statements were not either intended or reasonably interpreted by the jury to be a comment on Odle's failure to testify. For these reasons, Claim CCC is DENIED.

**IV**

This court will address the remaining claims—Claims H, I and DDD—after the evidentiary hearing.

IT IS SO ORDERED.