**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William C. WILSON, Defendant–
Appellant.**

No. 92–6224.

United States Court of Appeals,
Eleventh Circuit.

June 11, 1993.

Michael J. Trost, Atlanta, GA, for defendant-appellant.

J.B. Sessions, III, U.S. Atty., Gary Whittle, Donna E. Barrow, Asst. U.S. Attys., Mobile, AL, for plaintiff-appellee.

Before DUBINA, Circuit Judge, CLARK and ESCHBACH *, Senior Circuit Judges.

DUBINA, Circuit Judge:

### I.

Appellant William C. Wilson ("Wilson") appeals the district court's imposition of sentence under the United States Sentencing Guidelines ("U.S.S.G." or "guidelines") following his plea of guilty to one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371 (1988). Wilson makes two assertions of error. First, he contends that the district court should have granted his application for a two-level decrease in the offense level for his acceptance of responsibility for the crime pursuant to U.S.S.G. § 3E1.1. Second, he contends that the district court erred in determining the offense level by improperly calculating the actual or intended "loss" to victims of the fraud under U.S.S.G. § 2F1.1. The district court's denial of the adjustment under § 3E1.1 is affirmed summarily. We vacate the order imposing sentence on the basis of the district court's calculation of loss and remand for resentencing.

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

## II.

The fraud in this case involved obtaining cash fees from would-be borrowers under the false pretense that the conspirators were legitimate and successful loan brokers. Victims paid the fees in advance, with the fee amounts being determined according to the size of the requested loan. Fees ranged from $750 to $2,500 for a single application. Over the period in question, from January 1986 until November 1988, the conspirators took in approximately $106,000 in advance fees from victims seeking $30,320,000 in aggregate loans.

At the sentencing hearing, the district court heard statements from three victims that tended to show they were injured to a greater extent than the loss of advance fee amounts. One victim's letter to the court recounted how foolish and angry he and his associates continued to feel over having been duped by the conspirators, who represented themselves as "good Christians helping businesses secure loans." R2–46. Another victim testified that he had incurred unspecified administrative expenses for appraisal and accountancy services incident to applying for a loan. R2–48. A third victim who planned to start a franchise business, relying on assurances that her loan would be forthcoming, obtained interim financing secured by a lien on her home. After quitting her job to start the business, she defaulted on the interim mortgage when the loan failed to materialize, and the creditor foreclosed. By then her husband had quit his job as well. R2–51–52. The government argued that these witnesses were typical of the scheme's victims, although no evidence was offered to demonstrate how the witnesses' circumstances were similar to those of other victims.

The district court concluded that the entire $30,320,000 face amount of the promised loans represented the victims' losses and therefore calculated Wilson's offense level as "19" under the 1987 version of U.S.S.G. §§ 2F1.1(a), (b)(1) and (b)(2), *amended in other respects,* U.S.S.G. App. C ¶ 156 (Nov. 1, 1989). Wilson was sentenced to thirty-six months imprisonment without parole to be followed by an equal period of supervised release, ordered to make restitution of the advance fees jointly and severally with his co-conspirators, and ordered to pay an assessment of fifty dollars. R1–30.

## III.

■ We apply the version of the sentencing guidelines and commentary in effect on the date of sentencing, 18 U.S.C. §§ 3553(a)(4)–(5) (1988), unless a more lenient punishment would result under the guidelines version in effect on the date the offense was committed; *see United States v. Marin,* 916 F.2d 1536, 1538 & n. 4 (11th Cir.1990) (per curiam). We have previously taken the view that post-offense amendments that clarify the commentary accompanying the guidelines do not represent changes in governing law but merely explain the law already in effect and therefore may be employed by the court at sentencing without running afoul of the Ex Post Facto Clause [1] even if they tend to prejudice the defendant. *See United States v. Robinson,* 935 F.2d 201, 204 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992). The Supreme Court has recently held, however, that the Commission's subsequent interpretation of its own guidelines will overrule the otherwise binding construction given by controlling judicial authority unless the new interpretation is plainly erroneous or inconsistent with the guideline itself, a federal statute or the Constitution. *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993); *cf. United States v. Dedeker,* 961 F.2d 164, 166 n. 4 (11th Cir.1992) (viewing commentary amendments as "strongly persuasive clarification[s]" of the guidelines). Nevertheless, as our discussion below makes plain, the present case does not require us to resolve the ex post facto issues associated with an intervening interpretation of the guidelines by newly promulgated commentary because we would reach the same result on the merits regardless of which version of the guidelines and commentary applied.[2]

---

1. U.S. Const. art. I, § 9, cl. 3; *see also id.* § 10, cl. 1.

2. Nor do we attempt to resolve the issue left open by the Supreme Court in *Stinson,* whether

■ In determining the offense level for a crime of fraud or deceit such as Wilson's, the district court is required to set a dollar value on the victims' loss. U.S.S.G. § 2F1.1(b)(1) (1987). According to Application Note 7 to § 2F1.1, as it has been in effect since June 15, 1988, that valuation must be made consistent with the provisions of § 2B1.1, which governs larceny, embezzlement and other forms of theft. Application Note 2 to § 2B1.1 in turn has made clear that " 'Loss' means the value of the property taken, damaged or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue." *See also* U.S.S.G. § 2F1.1, comment. (n. 7) (Nov. 1, 1992) ("loss is the value of the money, property, or services unlawfully taken"). This language in the guidelines commentary is to be given its plain and ordinary meaning. *See, e.g., Chapman v. United States,* — U.S. —, —, 111 S.Ct. 1919, 1925–26, 114 L.Ed.2d 524 (1991); *United States v. Strachan,* 968 F.2d 1161, 1162–63 (11th Cir.1992).

■ The phrase "property taken, damaged or destroyed" does not allow for inclusion of incidental or consequential injury, and it is error to rely on evidence of such injury in calculating loss when the value of the property may be ascertained. *United States v. Thomas,* 973 F.2d 1152, 1159 & n. 9 (5th Cir.1992). For example, the Commission has since provided that loss does not include interest that the victim would have earned from money appropriated through the fraud. U.S.S.G. § 2F1.1, comment. (n. 7) (Nov. 1, 1992). *Contra United States v. Jones,* 933 F.2d 353, 354–55 (6th Cir.1991) (per curiam) (holding that loss includes "the time value of [the victim's] money"). We recognize that our holding is inconsistent with Sixth Circuit precedent, *see also United States v. King,* 915 F.2d 269, 272 (6th Cir.1990), but we

regard it as compelled by the guideline provisions in effect at the time Wilson's offense was completed in November 1988 and at the time of sentencing on March 12, 1992, as authoritatively explained by the commentary in force on either date. *See* U.S.S.G.App. C ¶¶ 7, 30 (June 15, 1988). Our holding is also consistent with the persuasive authority of the Fifth Circuit's September 1992 holding in *Thomas.*

To be sure, "[i]n contrast to other types of cases," the Commission has determined that reasonably foreseeable consequential damages may be considered in determining loss from government procurement and product substitution frauds because "such damages frequently are substantial in such cases." U.S.S.G. § 2F1.1, comment. (n. 7(c)) (Nov. 1, 1991). Nevertheless, "[a]lthough they are imperfect," *id.* § 2F1.1, comment. (backg'd) (1987), the victim's direct loss and the sophistication of the criminal scheme have been selected as the two primary determinants of the appropriate sentence for other types of fraud.[3] The Commission's apparent reason for not requiring an evaluation of consequential harm to victims of ordinary frauds like Wilson's was that "the value of property taken ... is an indicator of both the harm to the victim and the gain to the defendant." *Id.* § 2B1.1, comment. (backg'd) (1987). We cannot fault this compromise between the retributive goals of punishment, which might have been advanced best by basing sentence solely on injury to the victim, and its deterrent function, which might have been advanced best by determining sentence solely from the offender's gain.[4] In addition, we note that avoiding the calculation of consequential injury relieves the district court of a potentially onerous factfinding burden and may also promote the objective of uniformity in sentencing outcomes.

a defendant may take advantage of commentary amendments promulgated after the district court's sentencing decision.

3. The guidelines provide a two-level enhancement if the offense involved "more than minimal planning" or "a scheme to defraud more than one victim." U.S.S.G. § 2F1.1(b)(2)(A)–(B) (1987).

4. As recognized in the commentary, there are many possible circumstances in which the offender will be unable to realize the full value of the property taken or otherwise will not benefit to the full extent of the victim's loss. U.S.S.G. § 2F1.1, comment. (n. 8) (1987), *amended,* U.S.S.G.App. C ¶ 393 (Nov. 1, 1991).

■] The determination of loss need not be made "with precision." U.S.S.G. § 2F1.1, comment. (n. 8) (Nov. 1, 1991).

The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations.

*Id.; see also* U.S.S.G. § 2B1.1, comment. (n. 3) (1987). We have previously held, however, that the district court must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines. *United States v. Patrick,* 983 F.2d 206, 209–11 (11th Cir.1993); *see also United States v. Hughes,* 775 F.Supp. 348, 350 (E.D.Cal.1991). We are unable to see how the principal face amount of a promised loan can have any relevance, in a fraudulent brokerage fee case such as this, to the determination of the victim's loss. Although the district court accorded great weight to the fact, in our view it was mere happenstance that the actual value of the property taken, namely the amount of the brokerage fee, depended upon the size of the loan requested by a victim. No matter how Wilson arrived at the calculation of the fee for his "services" the victim's loss would have been the same. More importantly, even in the absence of fraud the would-be borrowers would have been required to repay the loan amounts in full, to say nothing of interest, closing costs and the like. Accordingly, the face amounts did not provide "a reasonable estimate of the loss," and reliance on those figures was clearly erroneous. *See United States v. Shriver,* 967 F.2d 572, 574 (11th Cir.1992); *United States v. Kopp,* 951 F.2d 521, 530 (3d Cir. 1991); *cf. United States v. Schneider,* 930 F.2d 555, 557–58 (7th Cir.1991) (government procurement fraud case). The government's reference to *United States v. Rayborn,* 957 F.2d 841 (11th Cir.1992) (per curiam), in which we held that intended loss may be aggregated with actual loss by the victim, is unavailing because the present case does not involve an allegation that the defendant tried but failed to inflict greater loss. *See also*

U.S.S.G. §§ 2X1.1, 2F1.1, comment. (n. 7) (Nov. 1, 1991).

■] A departure from the applicable guideline sentencing range ("GSR") in a fraud case may be appropriate if "the harmfulness and seriousness of the conduct" are not fully captured by reliance on the victim's loss. U.S.S.G. § 2F1.1, comment. (n. 10) (Nov. 1, 1991); *see also id.* § 2F1.1, comment. (n. 9) (1987); *see generally* 18 U.S.C. § 3553(b) (1988); U.S.S.G. § 5K2.0, p.s. (June 15, 1988). On remand the district court may consider whether a departure is appropriate. We express no opinion as to whether the facts of this case may warrant such a departure, whether upward or downward from the GSR. We doubt that feelings of foolishness, anger or disappointment are so far beyond the heartland of fraud offenses as to constitute psychological harm to the victim within the meaning of the Policy Statement in § 5K2.3 (1987) and Application Note 10(c) to § 2F1.1 (Nov. 1, 1991), although it may be that such severe harm occurred here. *Cf. United States v. Lara,* 975 F.2d 1120, 1128 (5th Cir.1992) (finding inadequate proof of harm). Although exceptional cases exist, and this may be one of them, some degree of consequential reliance by the victim is also to be expected in the majority of fraud cases involving false pretenses, and the presence of such reliance will not generally justify departure. The fact that loss of property impairs the victim's finances or hastens insolvency does not by itself constitute grounds for departure, especially when the value of the property taken from an individual victim is relatively small, but unique factual circumstances may exist which render the loss of particular property especially harmful. *See generally* U.S.S.G. § 5K2.5, p.s. (1987) (Property Damage or Loss). As to each of these considerations, the district court is in the best position to hear the evidence and draw reasonable inferences therefrom in making specific factual findings, *see United States v. Huang,* 977 F.2d 540, 543–44 (11th Cir.1992) (per curiam) (requiring detailed statement of grounds for departure), and we make no attempt at this stage to suggest what evidence should be considered or how it should be weighed.

*See, e.g., Kopp*, 951 F.2d at 536.[5]

## IV.

For the foregoing reasons we vacate Wilson's sentence and remand this case for re-sentencing.

AFFIRMED in part, VACATED and REMANDED.

---

**5.** Although we express no opinion concerning its applicability to the present case, U.S.S.G. § 3A1.1 (1987) also allows the sentencing court to make an upward adjustment of the offense level if the fraud injures an especially vulnerable victim. *See* U.S.S.G.App. C ¶ 245 (Nov. 1, 1989); *see also* U.S.S.G. § 2F1.1, comment. (n. 12) (Nov. 1, 1989); *see generally United States v. Morrill*, 984 F.2d 1136 (11th Cir.1993) (en banc).