**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Milton Zucker MENDE, Defendant–Appellant.**

No. 93–50586.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1994.

Decided Jan. 3, 1995.

Thomas M. Kummerow, Seattle, WA, for defendant-appellant.

Mark C. Holscher, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLOYD R. GIBSON,* HUG, and POOLE, Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge:

Milton Mende appeals his conviction and sentence for conspiracy, multiple counts of mail fraud, wire fraud, and money laundering. Mende alleges that the district court erred in three ways: failing to grant his motion for mistrial based on improper prosecutorial comments on his exercise of his Fifth Amendment privilege against self-incrimination; admitting evidence of his prior fraudulent conduct; and calculating his base offense level. We AFFIRM.

## I. BACKGROUND

From 1984 until 1990, Mende and his co-conspirators, Robert Turman and Samuel Longo, organized and implemented a complex loan fee fraud scheme. Beginning in 1984, Mende created a series of worthless shell companies backed by millions of dollars in nonexistent assets. He used false documentation to deceive accountants into certifying that his companies were backed by millions of dollars which, in fact, did not exist.

Mende then sent out false financial packages and made phone calls to hundreds of prospective clients in order to solicit advance fees for nonexistent loans and loan guarantees. Based on these financial packages, which contained lists of fictitious assets, falsified financial statements, and a fictional company history, the conspirators convinced numerous clients to pay advance fees for loans that were never forthcoming or loan guarantees that were not honored on default.

Mende was charged in a forty-three count indictment and convicted of seven counts of mail fraud under 18 U.S.C. § 1341 (1988), twelve counts of wire fraud under 18 U.S.C. § 1343 (1988), four counts of money laundering under 18 U.S.C. § 1957 (1988), and one count of conspiracy under 18 U.S.C. § 371 (1988). The district court sentenced Mende to 151 months imprisonment. Mende appeals his conviction and sentence.

## II. DISCUSSION

### A. Prosecutorial Comments on Mende's Silence.

Mende first argues that during the government's rebuttal argument, the prosecutor impermissibly commented on Mende's failure to testify, thereby violating Mende's Fifth Amendment [1] privilege against self-incrimination. Throughout the course of the trial, the defense had characterized the government's evidence as a few nonrepresentative bad deals that the government had selectively presented. In response, the prosecutor reminded the jury that the defense had failed to present any evidence of prior successful business deals. Counsel for co-defendant Samuel Longo objected to the statement and moved for a mistrial on the grounds that this statement improperly commented on the defendants' failure to testify. Counsel for Mende joined in the motion for a mistrial.

---

* Senior Judge for the Eighth Circuit Court of Appeals, sitting by designation.

1. No person shall be … compelled in any criminal case to be a witness against himself …

After a brief discussion, the court denied the motion for mistrial, but invited defense counsel to request an additional curative jury instruction on this issue. None was requested.

In *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), the Supreme Court held that the self-incrimination clause of the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." The test to determine the existence of a *Griffin* violation is "whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *United States v. Fleishman*, 684 F.2d 1329, 1343 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). We review potential *Griffin* violations *de novo*. *United States v. Mares*, 940 F.2d 455, 461 (9th Cir.1991); *but see U.S. v. Hoac*, 990 F.2d 1099, 1103–04 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994).

There is a distinction between a comment on the defense's failure to present exculpatory evidence as opposed to a comment on the defendant's failure to testify. This Court has recognized that " 'a prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, as long as it is not phrased to call attention to defendant's own failure to testify.' " *United States v. Lopez–Alvarez*, 970 F.2d 583, 595–96 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992) (quoting *United States v. Bagley*, 772 F.2d 482, 494–95 (9th Cir.1985), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986)). It is equally clear that " '[a] comment on the failure of the *defense* as opposed to the *defendant* to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege.' " *United States*

*v. Castillo*, 866 F.2d 1071, 1083 (9th Cir.1988) (quoting *United States v. Dearden*, 546 F.2d 622, 625 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977)).

Viewed in its proper context, the prosecutor's comment in this case did not call attention to Mende's failure to testify. The comment instead addressed the defense's failure to produce any evidence of paid guaranties or any other prior successful business transactions in support of Mende's claim that the government had deliberately withheld evidence of his legitimate business activities in order to create the illusion of wrongdoing. This conclusion is supported by the language of the prosecutor's comment itself, which specifically mentioned the availability of subpoena power to call additional witnesses and reminded the jury that the defendant was in fact under no obligation to take the stand and testify.

**B. Evidence of Mende's Prior Fraudulent Activities.**

At a pretrial hearing, the government moved to allow introduction of evidence that one of Mende's co-defendants, Robert Turman, had been warned by a third party, Ed Bray, that Mende had been previously involved in a similar fraudulent scheme. At that point, the district court ruled that it would not allow this evidence, but invited the government to raise the issue again at trial.

Beginning with their opening statements and continuing throughout the course of the trial, Mende's co-defendants presented a lack of knowledge defense. Both denied any knowledge on their part that Mende's companies were fraudulent. Recognizing that Turman and Longo had placed their knowledge of Mende's fraudulent conduct at issue, the government renewed its motion. After entertaining arguments from counsel regarding the admissibility of Bray's statement, the district court then ruled that it would allow the jury to consider a portion of Bray's testimony.[2] This testimony was immediately fol-

---

2. *Question* [by the government]: "What information did you give Mr. Turman about your concerns or what the basis was for your concern, and Fitch's concern, about the rating that it issued for British Indemnity Group?"

*Answer* [by Bray]: "I told him [Turman] that we had come upon information that would link Mr. Mende to a fraudulent banking operation with a similar name."

lowed by a limiting instruction. Mende argues that the district court abused its discretion in admitting Bray's testimony.

■ Federal Rules of Evidence Rule 403 allows the trial judge to exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.[3] Mende maintains that the district court erred in failing to exclude this evidence. He argues that Bray's statement was of little probative value and that it severely prejudiced his defense by informing the jury that he had formerly engaged in the same type of fraudulent conduct for which he was accused. Rule 403, however, is " 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.' " *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir.1987) (quoting *United States v. Meester*, 762 F.2d 867, 875 (11th Cir.), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985)). Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it. We review the district court's ruling under Rule 403 for abuse of discretion. *United States v. Crespo de Llano*, 838 F.2d 1006, 1018 (9th Cir.1987).

■ It is clear from the record that the district court carefully considered this issue, weighed the probative value against any potential prejudice to Mende, and determined that the probative value of the evidence outweighed any potential prejudice. Mende's co-defendants put their knowledge of Mende's fraudulent activities in issue, and Bray's statement was clearly probative of that question. Any resultant prejudice was minimized by the limiting instruction. Mende maintains that this type of limiting instruction could only aggravate the prejudice by focusing the prior conduct clearly on him. But we must presume that juries will follow the district court's limiting instructions. *United States v. Baker*, 10 F.3d 1374, 1388 (9th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994).

Based on the record, we cannot conclude that the district court abused its discretion.

## C. Mende's Base Offense Level.

Because Mende's base offense level under the Federal Sentencing Guidelines depends in large part upon the amount of actual and intended loss inflicted by his fraud, U.S.S.G. 2F1.1(b), Application Notes 7, 8, the district court held two separate hearings to determine the amount of that loss. The district court found that Mende had intended to defraud his victims out of $70,000,000, and that his victims had incurred $17,000,000 in actual losses. The banks' losses include $3,000,000 in advance fees, $13,000,000 incurred from defaulted loans guaranteed by Mende's companies, stock losses of $647,000, and additional actual losses of $500,000. The district court found the amount of total loss in excess of $80,000,000, resulting in an eighteen-level increase in Mende's base offense level under U.S.S.G. 2F1.1(b)(1)(S). Mende was subsequently sentenced to 155 months imprisonment.

■ Mende contends that the district court erred by including in the calculation of actual loss the $13,000,000 in losses that the banks incurred when Mende's company failed to honor its loan guarantees. Mende argues that only the advance fees paid by the banks should have been included as actual loss. The losses suffered from defaulted loans guaranteed by his company, he maintains, should be viewed as incidental and consequential damages and therefore should not be included in the calculation of actual loss under the Guidelines. We review the district court's interpretation and application of the Federal Sentencing Guidelines *de novo*, and its underlying findings of fact for clear error. *United States v. Shaw*, 3 F.3d 311, 312 (9th Cir.1993).

■ Mende relies on *United States v. Wilson*, 993 F.2d 214 (11th Cir.1993), in which the Eleventh Circuit held that "loss" within the meaning of the Federal Sentenc-

---

**3.** "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consider-

ations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R.Evid. 403.

ing Guidelines did not encompass incidental and consequential damages. However, *Wilson* is inapposite. The type of loss sustained by the victim banks in this case runs well beyond application fees. Mende's companies fraudulently contracted to guarantee these loans in exchange for an advance fee, and the victim banks issued loans in reliance on those guarantees. It is clear that without a binding guarantee of repayment, none of the victim banks would have issued the loans. It is equally clear that once the borrowers defaulted, the victim banks incurred $13,000,-000 in losses as a direct result of Mende's companies' refusal to honor their contractual obligations. Unlike *Wilson*, there can be no doubt that Mende's fraud cost his victims more than just advance fees. In this case the district court found the victim banks' losses to be the direct result of the defendants' fraudulent misrepresentations, rather than mere consequential and incidental damages. We do not find the district court's finding clearly erroneous; rather, we find these findings to be soundly based on the record.

## III. CONCLUSION

Accordingly, the judgement of the district court is AFFIRMED.