110 F.3d 70
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fred BAKHSHEKOOEI, Joseph Robles, Kam Foo, Timothy Laros,
Paul Cooper, and Darrell Vartanian, Defendants-Appellants.
 Nos. 95-50143, 95-50156, 95-50157, 95-50158, 95-50159 and 95-50160.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1997.
Decided March 19, 1997.
 
 Before: PREGERSON, REINHARDT, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Fred Bakhshekooei, Joseph Robles, Kam Foo, Timothy Laros, Paul Cooper, and Darrell Vartanian ("Appellants") appeal the district court's judgment of conviction and sentence. Appellants were charged with: (1) mail and wire fraud under 18 U.S.C. §§ 1341 and 1343; (2) conspiracy to commit mail and wire fraud under 18 U.S.C. § 371; and (3) aiding and abetting mail and wire fraud under 18 U.S.C. § 2.
 
 
 3
 This case involves the alleged fraudulent practices of four telemarketing companies, United Safety Associates, Inc. ("USA"), Life Pro International, Inc. ("LPI"), Midwest Home, Family, Inc. ("Midwest"), and American Superior Products, Inc. ("ASP"). These companies operated at various times between February of 1990 and March of 1993.
 
 
 4
 We discuss below the issues raised by each Appellant and the evidence that relates to such issues. After doing so we conclude that the convictions of Bakhshekooei, Foo, Laros, Cooper, and Vartanian should be affirmed, and that the conviction of Robles should be reversed.
 
 I. Sufficiency of the Evidence
 
 5
 Bakhshekooei, Foo, and Robles contend that there was insufficient evidence to support their convictions. "Sufficient evidence exists to support a conviction, if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the substantial elements of the crime beyond a reasonable doubt." United States v. Melvin, 91 F.3d 1218, 1225 (9th Cir.1996).
 
 
 6
 The elements the government must prove beyond a reasonable doubt to convict for mail and wire fraud are that the defendant (1) used or caused the use of the mails or telephone in interstate commerce; (2) in furtherance of a scheme to defraud; (3) with the intent to defraud. United States v. Bonanno, 852 F.2d 434, 440 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989); see also 18 U.S.C. §§ 1341, 1343. To establish a scheme to defraud, the government must prove specific intent to defraud, which is shown if the scheme was "reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Bohonus, 628 F.2d 1167, 1172 (9th Cir.), cert. denied, 447 U.S. 928 (1980).
 
 
 7
 The elements the government must prove beyond a reasonable doubt to establish a conspiracy are: "(1) an agreement to accomplish an illegal objective; (2) the commission of one or more overt acts in furtherance of the illegal purpose; and (3) the requisite intent by the defendant to commit the target offense." Bonnano, 852 F.2d at 440; see also 18 U.S.C. § 371. "The existence of a conspiracy may be proved by circumstantial evidence that defendants acted together for a common illegal goal." United States v. Wiseman, 25 F.3d 862, 869 (9th Cir.1994) (quoting United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987)).
 
 
 8
 The elements the government must prove beyond a reasonable doubt to establish aiding and abetting are:
 
 
 9
 (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.
 
 
 10
 United States v. Gaskins, 849 F.2d 454, 459 (9th Cir.1988).
 
 A. Bakhshekooei
 
 11
 Bakhshekooei claims that there was insufficient evidence to support his convictions for mail and wire fraud, for aiding and abetting mail and wire fraud, and conspiracy to commit mail and wire fraud. We disagree.
 
 
 12
 The government presented evidence that Bakhshekooei played a central role in the fraudulent scheme. This evidence, summarized below, was sufficient to establish all the elements of mail and wire fraud, aiding and abetting mail and wire fraud, and conspiracy to commit mail and wire fraud.
 
 
 13
 First, Bakhshekooei used a false name, Tony Jacobs, and falsely characterized the four telemarketing companies as mail order companies when he purchased leads to potential customers. Bakhshekooei attempted to avoid the close scrutiny that the sellers of these leads apply to telemarketing companies to ensure that they are not engaged in fraudulent activities. A rational jury could have inferred that Bakhshekooei made these misrepresentations because he knew that the four telemarketing companies were engaged in fraudulent activity.
 
 
 14
 Second, a rational jury could have concluded that Bakhshekooei acted with the intent to defraud a vulnerable group--senior citizens. The government offered evidence that Bakhshekooei purchased leads from categories such as "Contest Buyer" and "Opportunity Seeker." An expert testified that anyone familiar with the purchase of mailing lists would know that these categories are composed primarily of elderly people.
 
 
 15
 Third, the government introduced evidence that Bakhshekooei knew that a large number of customers complained that they had not received prizes expressly promised to them or that they received products they did not order. Bakhshekooei also oversaw the creation of a "do not sell" list comprised of these complaining customers. This list, disseminated to the sales representatives, prevented any further sales contacts with these customers. A rational jury could have concluded that Bakhshekooei was intentionally protecting the telemarketing companies from any investigations that may have resulted from customer complaints to the Better Business Bureau or the Attorney General.
 
 
 16
 Additionally, the following circumstantial evidence supported the conclusion that Bakhshekooei was an active participant in the conspiracy to commit mail and wire fraud: (1) Bakhshekooei worked with Laros and Cooper at more than one of the telemarketing companies; (2) Bakhshekooei, Laros, and Cooper were the only ones who received lease payments for luxury automobiles; (3) Bakhshekooei was one of five people who received reimbursements for meals and travel; and (4) Bakhshekooei went on a trip to Las Vegas with Laros and Cooper--a trip reserved exclusively for the highest level owners and managers.
 
 
 17
 A rational trier of fact could also reasonably infer from the fact that Bakhshekooei was controller for the four telemarketing companies that he was aware of the companies' practice of shifting profits from one company to another. Furthermore, the government presented evidence that Bakhshekooei knew about the companies' practice of evading detection by shutting down, moving offices, and reopening under a new name because he was with the companies when they made these moves.
 
 
 18
 Accordingly, there was sufficient evidence for a rational jury to convict Bakhshekooei of mail and wire fraud, aiding and abetting mail and wire fraud, and conspiracy to commit mail and wire fraud.
 
 B. Foo
 
 19
 On appeal, Foo only contests his conviction for mail fraud relating to victim Ray Crawford. Crawford testified that Foo had contacted him by phone in January of 1992 and promised him an air purifier and a "very expensive bracelet." Foo also promised Crawford the chance to win big prizes.
 
 
 20
 Crawford believed he had to buy a product to get a promotional gift. He testified that none of the USA salespeople, including Foo, disclosed to him that no purchase was necessary for him to receive the prizes. Crawford also testified that he would not have sent $1,900 to the company if any of the salespeople had told him that he did not have to purchase a product.
 
 
 21
 After sending in the $1,900, Crawford received three air purifiers and a cheap bracelet.
 
 
 22
 Foo does not contest that he made the representations to Crawford about the value of the products Crawford would receive and his chances at winning the prizes. Foo contends that he did not make false or misleading statements to Crawford. However, "[d]eceitful statements of half-truths or the concealment of material facts is actual fraud under the [mail fraud] statute." United States v. Beecroft, 608 F.2d 753 (9th Cir.1979).
 
 
 23
 Reviewing the evidence in the light most favorable to the prosecution, a rational jury could have found that Foo committed the essential elements of the crime of mail fraud beyond a reasonable doubt. Foo made material misrepresentations and omissions as to the value of the bracelet. He also concealed the material fact that no purchase was necessary to win a big prize. Accordingly, there was sufficient evidence to convict Foo for mail fraud.
 
 C. Robles
 
 24
 Robles claims insufficient evidence exists to support his convictions for wire fraud. Based on the evidence, the jury could only have convicted Robles under a theory that he aided and abetted Vartanian's three wire frauds.
 
 
 25
 Robles argues that there was insufficient evidence for a rational jury to find two elements necessary to support a conviction of aiding and abetting: (1) the "specific intent to facilitate" Vartanian's wire frauds; and (2) any acts committed by Robles to evidence that he "assisted or participated" in Vartanian's wire frauds. See Gaskins 849 F.2d at 459-60 (holding that under an aiding and abetting theory " 'mere presence' at the scene of a crime and knowledge that a crime is being committed is not sufficient to establish that an accused aided and abetted, unless the prosecution proves beyond a reasonable doubt that the defendant was a participant, and not merely a knowing spectator.").
 
 
 26
 After carefully reviewing the record and counsel's representations at oral argument, we conclude that only weak circumstantial evidence supports the conclusion that Robles had the "specific intent to facilitate" Vartanian's wire frauds. The evidence only shows that: (1) Robles might have heard Vartanian's words while committing the wire frauds because Vartanian spoke in a loud distinctive voice; and (2) Robles was more than twenty feet away from Vartanian when Vartanian committed the wire frauds. Based on this scant evidence, no rational jury could find beyond a reasonable doubt that Robles had the "specific intent to facilitate" Vartanian's three wire frauds.
 
 
 27
 The government contends that the jury had sufficient evidence to conclude that Robles "participated or assisted" in Vartanian's three wire frauds. The evidence included: (1) Robles's participation in writing a memorandum instructing LPI telemarketers to hang-up on customers after reading them a disclaimer with the phone upside-down so that the telemarketers could not hear what the customers said; (2) LPI employees testifying that they never saw Robles discipline Vartanian; and (3) Robles preventing Vartanian from quitting.
 
 
 28
 While a review of this evidence in the light most favorable to the government might support an inference that Robles intended to create an atmosphere conducive to fraud, it does not show beyond a reasonable doubt that Robles "participated or assisted" in any of Vartanian's three wire frauds. Accordingly, we reverse Robles's convictions for three counts of wire fraud.[1]
 
 II. Suppression
 A. Standing[2]
 
 29
 We review de novo a district court's determination of standing to challenge a search and seizure. United States v. Armenta, 69 F.3d 304, 306-07 (9th Cir.1995). Factual findings underlying a standing determination are reviewed for clear error. Id.
 
 
 30
 Fourth Amendment rights are personal and may not be asserted vicariously. United States v. Broadhurst, 805 F.2d 849, 851 (9th Cir.1986). "To establish actual standing, the [appellant] must demonstrate that he was the victim of an invasion of privacy." United States v. Cella, 568 F.2d 1266, 1280 (9th Cir.1977). A corporate employee does not have standing to challenge the search of a corporation's offices or other property merely because the employee has access or control over certain areas. Rather, the corporate employee must demonstrate an "independent possessory or proprietary interest." Id. Corporate employees do, however, have a privacy interest in their personal office space "that is given over to [their] exclusive use." Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1335 (9th Cir.1987).
 
 
 31
 The district court correctly concluded that Appellants did not demonstrate an "independent possessory or proprietary interest" in the Nichols Street address, the Ayers Self Storage location, or the Datsun station wagon owned by Laros's parents.
 
 B. Specificity of the Warrants
 
 32
 All the Appellants contend that the search warrants do not pass constitutional muster because they were not sufficiently specific in describing the items and documents to be searched and seized. "To determine whether a warrant lacks sufficient specificity, we must examine both the warrant's particularity and its breadth." United States v. Kow, 58 F.3d 423, 426 (9th Cir.1995).
 
 
 33
 In the present case, the three search warrants allowed the government agents to seize virtually every document. However, under the "permeated with fraud doctrine" a generalized seizure of business documents "may be justified if the government establishes probable cause to believe that the entire business is merely a scheme to defraud or that all of the business's records are likely to evidence criminal activity." Id. at 427-28 (emphasis added). Appellants argue that the "permeated with fraud doctrine" should not apply in this case because the declaration of FBI Agent Sherry Thomas does not specifically state that fraud was pervasive. Appellants' contention is without merit. This court has never held that a declaration must actually use the words "permeated with fraud" to support a finding of probable cause for issuance of a search warrant under the "permeated with fraud doctrine." Rather, it is enough that the supporting declaration makes a showing that a business was in fact permeated with fraud. See United States v. Washington, 797 F.2d 1461, 1473 (9th Cir.1986). In this case, Agent Thomas described in adequate detail the evidence which led her to conclude that Appellants were operating a "boiler room." Thomas's descriptions and conclusions provide a sufficient showing to satisfy the "permeated with fraud doctrine."
 
 C. Franks Hearing
 
 34
 Appellants contend that FBI Agent Sherry Thomas made false statements in her declaration submitted in support of the search warrants. A criminal defendant is entitled to a hearing to test the veracity of such a declaration under Franks v. Delaware, 438 U.S. 154 (1978), if he makes a substantial preliminary showing that the declaration in support of a search warrant "contain[ed] intentionally or recklessly false statements, and ... [that] the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." United States v. Meling, 47 F.3d 1546, 1553 (9th Cir.) (quoting United States v. Lefkowitz, 618 F.2d 1313, 1317 (9th Cir.1980)), cert. denied, 116 S.Ct. 130 (1995).
 
 
 35
 We review de novo the district court's refusal to conduct a Franks hearing. Id. The district court's ruling whether false statements were made intentionally or recklessly is a factual determination reviewed for clear error. United States v. Hernandez, 80 F.3d 1253, 1260 (9th Cir.1996).
 
 
 36
 In this case, the district court ruled that Appellants failed to make the required evidentiary showing to justify a Franks hearing. We agree.
 
 
 37
 First, Appellants failed to present a signed declaration from Timothy Drake to substantiate their contention that Agent Thomas falsely represented information obtained from Drake. Second, Appellants point to two minor errors in the declaration of Agent Thomas regarding the Better Business Bureau: (1) Thomas inaccurately described the number of complaints about the telemarketing companies that the Better Business Bureau received; and (2) Thomas inaccurately stated that the companies were "dropped" from membership in the Better Business Bureau when in fact the companies never qualified for membership in the first place.
 
 
 38
 There is no substantial preliminary showing that Thomas intentionally made the inaccurate statements regarding the Better Business Bureau. In addition, the inconsistencies were immaterial in light of the additional evidence in Thomas's declaration that the telemarketing companies were "permeated with fraud."
 
 III. Brady Error
 
 39
 We review de novo challenges to convictions based on alleged Brady violations. United States v. Alvarez, 86 F.3d 901, 903 (9th Cir.1996), cert. denied, 117 S.Ct. 748 (1997). A Brady violation occurs when the Government withholds from a defendant material, exculpatory evidence. United States v. Manning, 56 F.3d 1188, 1198 (9th Cir.1995). Evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).
 
 
 40
 Appellants contend that the government committed reversible Brady error by not revealing that its own computer expert agreed with Bakhshekooei's expert that the LPI computer was not "rigged." It is unlikely that the jury would have acted differently had it known about the purported Brady material. The jury had the important information--the uncontroverted fact that the computer system at LPI worked properly. Knowing that a government expert came to this same conclusion adds little. No Brady violation was committed.
 
 
 41
 Appellants also ask the court to remand the case for an in camera review of the prosecutor's files to determine whether the government suppressed other alleged Brady materials. This court has ordered such hearings in cases where the government has committed Brady violations. See United States v. Bernal Obeso, 989 F.2d 331, 333 (9th Cir.1993) (remand for hearing when government failed to reveal informant's previous criminal history); United States v. Shaffer, 789 F.2d 682, 690 (9th Cir.1986) (remand for hearing where government committed reversible Brady error by failing to reveal important impeachment evidence about informant). Because the present case does not involve a Brady violation, we deny Appellants' request.
 
 IV. Evidentiary Rulings
 
 42
 We review the district court's evidentiary rulings for an abuse of discretion. United States v. Sarno, 73 F.3d 1470, 1488 (9th Cir.1995), cert. denied, 116 S.Ct. 2554 (1996). We also review for abuse of discretion a district court's evidentiary ruling in which the court balances the probative value of evidence against its prejudicial effect. United States v. Erickson, 75 F.3d 470, 476 (9th Cir.), cert. denied, 116 S.Ct. 1853 (1996).
 
 A. Customer Complaint Letters
 
 43
 Appellants assert the district court erred in admitting certain customer complaint letters. The government introduced those letters for the limited purpose of proving that the Appellants knew of their existence. Appellants contend that the district court erred in admitting the letters because no independent evidence existed to suggest that Appellants had knowledge of them. United States v. Lasky, 600 F.2d 765, 769 (9th Cir.), cert. denied, 444 U.S. 979 (1979). This argument is without merit. The district court may admit complaint documents based on circumstantial evidence. Id. In the present case, sufficient circumstantial evidence linked Bakhshekooei, Laros, and Cooper to the telemarketing companies' customer complaint departments. Thus, the district court did not abuse its discretion in admitting the customer complaint letters.
 
 
 44
 Furthermore,
 
 
 45
 [w]here documents are admitted on the theory that a defendant's actual knowledge of them shows that he must have realized the scheme was fraudulent, the jury should be told in plain and direct language, that such documents may be considered only if it has been independently shown that such defendant had actual knowledge of the documents while the asserted scheme was in progress.
 
 
 46
 Phillips v. United States, 356 F.2d 297, 306 (9th Cir.), cert. denied, 384 U.S. 452 (1966). In this case, the district court properly gave such a limiting instruction.
 
 
 47
 Appellants also argue that the probative value of the customer complaint letters was outweighed by the irrelevant and prejudicial descriptions of suffering contained in each letter. The district court's limiting instruction, however, warned jurors not to accept the contents of the letters as true because they could not be verified. Under the circumstances, the district court did not abuse its discretion in ruling that the prejudicial impact of the letters did not outweigh their probative value.
 
 B. Income Evidence
 
 48
 We agree with Appellants that evidence of their income is irrelevant because it does not tend to establish their motive or criminal intent. However, a district court's erroneous evidentiary ruling will require reversal only where the error more likely than not affected the verdict. United States v. Karterman, 60 F.3d 576, 578 (9th Cir.1995).
 
 
 49
 In this case, the government introduced substantial evidence in support of Appellants' convictions, including testimony of defrauded victims, testimony of employees specifically trained to make material misrepresentations and omissions, and a training tape which encouraged employees of the telemarketing companies to engage in fraudulent activity. The case against the Appellants is substantial, even without the income evidence.
 
 C. Better Business Bureau Rejection
 
 50
 Appellants contend the district court erred in admitting evidence that the Better Business Bureau rejected the telemarketing companies' membership applications. The government introduced this evidence, however, in response to Bakhshekooei's testimony about the Better Business Bureau's reasons for not accepting the telemarketing companies for membership.
 
 
 51
 Once a witness testifies about any specific fact, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement. United States v. Giese, 597 F.2d 1170, 1190 (9th Cir.), cert. denied, 444 U.S. 979 (1979). The evidence was also admissible to impeach Bakhshekooei's credibility. Fed.R.Evid. 607. The district court properly admitted the evidence.
 
 D. Co-conspirator Statements
 
 52
 Appellants assert that the district court erred in admitting testimony by Trina Ison about statements made to her by Shelly Moore regarding why USA frequently moved to different locations. Ison also testified that Mary Beth Bounassissi did not contradict Ison's statements. Both Moore and Bounassissi were employees of USA and LPI.
 
 
 53
 Hearsay statements are admissible against a party if they are made by an agent of the party and are within the scope of the agent's employment. Fed.R.Evid. 801(d)(2)(D). For a statement to be admissible under this rule, there must be substantial evidence of agency and the statement must have concerned a matter within the scope of the declarant's employment. United States v. Jones, 766 F.2d 412, 415 (9th Cir.1985). As employees of USA and LPI, both Moore and Bounassissi were Appellants' agents. Moore's statement and Bounassissi's silence occurred in the course of their employment and were about their work responsibilities. Therefore, the district court properly admitted Ison's testimony about Moore's statement and Bounassissi's silence under Rule 801(d)(2)(D).
 
 E. Rule 16(b) Sanction
 
 54
 Appellants contend the district court erred in excluding exhibits sought to be introduced by Bakhshekooei as a sanction for violating the district court's discovery order and Federal Rule of Criminal Procedure 16(b).
 
 
 55
 "We review the propriety of a sanction for violating Rule 16 for abuse of discretion." United States v. Aceves-Rosales, 832 F.2d 1155, 1156 (9th Cir.1987), cert. denied, 484 U.S. 1077 (1988). "We review de novo the question whether a willful violation of the pretrial order must be shown whereas, if a sanction is in order, the district court's choice of sanction will be reviewed under the abuse of discretion standard." United States v. Schwartz, 857 F.2d 655, 657-658 (9th Cir.1988).
 
 
 56
 "To determine whether the district court abused its discretion, we examine whether the evidence was 'of decisive value' or if the exclusion was 'disproportionate to the conduct of counsel.' " United States v. Duran, 41 F.3d 540, 545 (9th Cir.1994) (citing Aceves-Rosales, 832 F.2d at 1157).
 
 
 57
 Bakhshekooei does not present any compelling arguments to show that the excluded evidence was of "decisive value." Thus, the district court did not abuse its discretion in excluding the exhibits.
 
 F. Impeachment Evidence
 
 58
 Appellants argue that the district court abused its discretion in limiting the cross-examination of Timothy Drake, a witness for the government, regarding a misdemeanor vandalism conviction.
 
 
 59
 We review a trial court's decision to limit the scope of cross-examination for abuse of discretion. United States v. Dudden, 65 F.3d 1461, 1469 (9th Cir.1995). "The trial court does not abuse its discretion as long as the jury receives sufficient information to appraise the biases and motivations of the witnesses." Manning, 56 F.3d at 1197. We review de novo whether limitations on cross examination violated a defendant's right of confrontation. United States v. Marbella, 73 F.3d 1508, 1513 (9th Cir.), cert. denied, 116 S.Ct. 2555 (1996).
 
 
 60
 Evidence of previous wrongdoing is only admissible to impeach a witness' credibility when the wrongdoing involves dishonesty or is a felony. Fed.R.Evid. 609. Drake was convicted of misdemeanor vandalism, which is neither a felony nor a crime involving dishonesty. The vandalism conviction was only relevant to establish Drake's bias, based on a desire to avoid possible punishment for his activities at USA and LPI. The district court permitted inquiry into this area so that the jury could assess Drake's possible bias. The jury knew that Drake had been arrested and had gone to jail, that he did not like his experience in jail, and that he did not want to go back.
 
 
 61
 The areas into which the district court limited further inquiry--details of the underlying act of vandalism and details of Drake's arrest--could not have added any relevant information. Thus, the court acted well within its discretion to limit the line of cross-examination pursued by Vartanian's counsel.
 
 
 62
 Appellants' argument that their Sixth amendment right to confront witnesses was violated is similarly meritless. Appellants have no constitutional right to present irrelevant evidence. Wood v. Alaska, 957 F.2d 1544, 1550 (9th Cir.1992).
 
 G. Prejudicial Testimony
 
 63
 Appellants argue that the district court erroneously allowed the government to introduce irrelevant and prejudicial testimony from Basil Beardsley, Geneva Struwing, and Alan Pick. Appellants also contend that the district court committed error in denying their motions for mistrial based on these purported errors.
 
 
 64
 We review a district court's evidentiary rulings for an abuse of discretion. Sarno, 73 F.3d at 1488. We also review a district court's decision balancing the probative value of evidence against its prejudicial effect for an abuse of discretion. Erickson, 75 F.3d at 476. We review a district court's denial of a motion for mistrial for an abuse of discretion. United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992).
 
 
 65
 Beardsley testified about predating a check to explain that he paid LPI from funds that he did not have at the time but expected to receive in the future in the form of his Social Security check. The testimony is relevant to demonstrate the extent of Beardsley's reliance upon Vartanian's false promise. Any prejudice arising from this testimony did not clearly outweigh its probative value. We therefore conclude that the district court did not abuse its discretion in allowing the jury to hear Beardsley's testimony.[3]
 
 
 66
 Struwing testified that she wrote a check to Midwest in order to gain the promised prizes to help support her daughter who suffered from Down's Syndrome. Struwing's testimony is relevant because it demonstrates the extent of her reliance upon the misrepresentations. Any prejudice arising from this testimony did not clearly outweigh its probative value. Thus, the district court did not abuse its discretion in allowing Struwing to testify on this point.
 
 
 67
 Finally, the government elicited testimony from Pick on cross-examination that he represented other telemarketing companies which law enforcement agencies shut down. The questions were relevant because they addressed Pick's credibility. Any prejudice arising from this testimony did not clearly outweigh its probative value. In fact, the government stayed within the district court's parameters by not asking whether any of Pick's clients had been convicted of crimes. The district court did not abuse its discretion in overruling Appellants' objection to the questioning of Pick.
 
 
 68
 We also conclude that the district court did not abuse its discretion in denying Appellants' motions for mistrial.
 
 V. Prosecutorial Statements
 
 69
 Appellants contend that the government committed prosecutorial misconduct during examination of witnesses by: (1) wrongfully revealing Michael Abzug's former attorney-client relationship with Todd Beard; (2) questioning Special Agent Sherry Thomas regarding the number of satisfied customers she encountered during her investigation; and (3) accusing Appellant Cooper during cross-examination of committing the crime of money laundering.
 
 
 70
 A trial court's ruling on prosecutorial comments is reviewed for an abuse of discretion. See United States v. Santiago, 46 F.3d 885, 892 (9th Cir.), cert. denied, 115 S.Ct. 2617 (1995). The district court sustained objections to the prosecutor's questions concerning Michael Abzug, the questions directed to FBI Agent Sherry Thomas, and the accusation of money laundering.[4] The district court acted well within its discretion when it denied Appellants' motion for a mistrial.
 
 
 71
 Appellants also object for the first time on appeal to the prosecutor's statement in closing argument about victims living "month-to-month on Social Security." We therefore review this claim for plain error. United States v. Olano, 507 U.S. 725, 730-32 (1993).
 
 
 72
 The record reveals no evidence indicating a specific or estimated percentage of elderly customers who lived "month-to-month on Social Security." Thus, the government misstated the facts in closing argument. However, the error will require reversal only if the statement more probably than not materially affected the fairness of the trial. United States v. Smith, 893 F.2d 1573, 1583 (9th Cir.1990). Any sympathy aroused by this brief comment is overshadowed by the substantial evidence presented by the government in support of the convictions. Therefore, the misstatement likely did not affect the outcome of the trial.
 
 VI. Griffin Error
 
 73
 Appellants contend that the district court erred in denying a motion for a mistrial based on the government's reference in closing argument to the fact that certain Appellants did not take the stand.
 
 
 74
 Griffin claims are reviewed de novo. United States v. Mende, 43 F.3d 1298, 1301 (9th Cir.1995). Prosecutors are forbidden to comment on a defendant's decision not to testify. Griffin v. California, 380 U.S. 609, 615 (1985). Prosecutorial comment on the defendant's failure to testify mandates reversal "where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for conviction, and where the evidence could have supported acquittal." United States v. Kennedy, 714 F.2d 968, 976 (9th Cir.1983) (quoting Anderson v. Nelson, 390 U.S. 523 (1968) (per curiam)), cert. denied, 465 U.S. 1034 (1984). "Nevertheless, where the prosecutorial comment was a single isolated statement, where it did not stress any reference to guilt, and where it was followed by curative instructions, we have been reluctant to reverse." Id.
 
 
 75
 In the present case, the comment was not extensive nor did it invite the jury to use the silence of those Appellants who did not testify as a basis for conviction. In the relevant portion of the closing argument, the prosecutor was trying to argue that those Appellants who did take the stand failed to acknowledge that the dialers in the telemarketing companies made misrepresentations to the people they called. The prosecutor failed to differentiate between those Appellants who had taken the stand and those who did not. He then explained that only Laros and Cooper, who did testify at trial, failed to acknowledge the misrepresentations.
 
 
 76
 After the district court sustained a defense objection to the prosecutor's statement, the prosecutor then told the jury that the Appellants who had not testified had every right to remain silent. Appellants also objected to the prosecutor's corrective comment. The substance of the brief corrective comment made by the prosecutor was no different from the jury instruction given by the district court about a defendant's constitutional right not to testify.
 
 
 77
 The prosecutor's brief statements in closing argument--though close--were not serious enough to merit reversal because of the court's ensuing curative instruction.
 
 VII. Cumulative Error
 
 78
 "Although individual errors looked at separately may not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial as to require reversal." United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir.1993). We are satisfied that the cumulative effect of the purported individual errors discussed above, taken together, are not sufficiently prejudicial to warrant reversal.
 
 VIII. Sentencing
 
 79
 Appellants contend that the district court improperly enhanced their sentences under U.S.S.G. § 2F1.1, arguing that the district court did not use a reasonable estimate of the losses caused by Appellants' fraud. Appellants also contend that the district court improperly enhanced their sentences under U.S.S.G. § 3A1.1(b).
 
 
 80
 We review de novo the district court's interpretation and application of the Sentencing Guidelines. United States v. Mullins, 992 F.2d 1472, 1479 (9th Cir.1993). We review a district court's factual findings underlying a sentence for clear error. Id.
 
 
 81
 At the sentencing hearing, Appellants agreed to the district court's sentencing enhancement under U.S.S.G. § 2F1.1. Because Appellants accepted the district court's method of calculating their respective sentences, they are judicially estopped from making a "factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990), cert. denied, 501 U.S. 1260 (1991). Appellants cannot now argue that the district court erred in sentencing.[5]
 
 
 82
 Appellants also assert that the district court did not have a basis to enhance their sentences under U.S.S.G. § 3A1.1(b) (1995), which states: "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels."
 
 
 83
 There was ample evidence before the district court to support its findings that Appellants targeted the elderly. Therefore, the district court did not commit error.
 
 Conclusion
 
 84
 For all these reasons, we affirm the convictions and sentences of Bakhshekooei, Foo, Laros, Cooper, and Vartanian and reverse Robles's conviction.
 
 
 85
 Affirmed in part, and Reversed in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We therefore need not address Robles's other arguments
 
 
 [2]
 Vartanian did not join Laros's motion in the district court to suppress evidence seized in the government's searches. Therefore, Vartanian waived his right to appeal the district court's denial of the motion to suppress. Fed.R.Crim.P. 12(b)(3); United States v. Restrepo-Rua, 815 F.2d 1327, 1329 (9th Cir.1987)
 
 
 [3]
 Vartanian claims that the district court committed error by denying his request for a limiting instruction concerning Beardsley's testimony of Midwest's illegal telemarketing activities. Vartanian complained that he had no involvement with Midwest and that there was no testimony linking or attempting to link him with Midwest. Regardless of whether the district court committed error, Vartanian cannot prove any prejudice arising from such error because the jury acquitted him of the conspiracy charge and convicted him of conduct totally unrelated to Midwest
 
 
 [4]
 The district court properly allowed the government to question Cooper about his intent in moving money between different corporate entities associated with the Appellants
 
 
 [5]
 Foo also argues that the district court improperly enhanced his sentence based on acquitted conduct. Foo's argument is foreclosed by the Supreme Court's decision in United States v. Watts, 117 S.Ct. 633 (1997), where the Court concluded that a sentencing court may consider conduct for which a defendant has been acquitted, as long as the facts considered are proved by a preponderance of the evidence. Id. at 638